In re **NEXT FINANCIAL GROUP, INC., Relator.**

No. 08–0192.

Supreme Court of Texas.

Nov. 14, 2008.

Linda P. Wills, Claire Winniford Parsons, Maxwell Lane Lowrey, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Houston TX, for Relator.

Thomas R. McDade, Alex Benjamin Roberts, Jasdeep S. Brar, Stephen Douglas Pritchett Jr., Beck, Redden & Secrest, LLP, Houston TX, for Real Party in Interest.

## PER CURIAM.

The issue in this mandamus proceeding is whether a former securities broker must arbitrate a claim that his employer wrongfully discharged him for refusing to commit an illegal act. *See Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 734–35 (Tex.1985). We hold that the employee's

*Sabine Pilot* claim falls within the scope of his arbitration agreement and is not subject to an exception limited to statutory employment discrimination claims. Because the trial court erroneously denied the employer's motion to compel arbitration, we conditionally grant mandamus relief.

In September 2006, NEXT Financial Group, Inc., a securities brokerage firm, hired the real party in interest, Michael Clements, as a regional supervisor. Clements did not have a written employment agreement with NEXT, but registered representatives of broker-dealers must register with one or more of the self-regulatory organizations that regulate the securities industry. *See* 15 U.S.C. § 78o–3 (2006) (discussing self-regulatory organizations); 17 C.F.R. § 240.15b7–1 (registration requirement). As a condition of his employment, Clements was required to register with the National Association of Securities Dealers (NASD)[1] by executing a Uniform Application for Securities Industry Registration or Transfer form (U–4). *See* 15 U.S.C. § 78o. The U–4 includes an agreement to "arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or bylaws of [the NASD] ... as may be amended from time to time...."

■ NEXT fired Clements on August 31, 2007, claiming that he failed to perform required duties in connection with an NASD audit. Shortly thereafter, Clements sued NEXT, alleging that he was actually fired for refusing to conceal a trader's fraudulent "churning" transac-

---

1. The NASD, a self-regulatory organization overseeing securities transactions, absorbed the enforcement arm of the New York Stock Exchange (N.Y.SE) and became the Financial Industry Regulation Authority (FINRA) on July 30, 2007. For purposes of this appeal, we will continue to refer to the agency as the NASD.

tions.[2] *See Sabine Pilot,* 687 S.W.2d at 734–35 (holding that an at-will employee can recover damages from an employer who terminated his employment solely for refusing to perform an illegal act). NEXT moved to compel arbitration under the Federal Arbitration Act (FAA) based on the arbitration agreement in the U–4. At the time the dispute arose and Clements filed suit, the NASD Code of Arbitration Procedure mandated arbitration of all disputes "aris[ing] out of the business activities of a member or an associated person," with the exception of claims "alleging employment discrimination, including sexual harassment, in violation of a statute." NASD Code of Arbitration Procedure §§ 13200(a), 13201 (2007) (NASD Code).

The trial court refused the arbitration request, and the court of appeals summarily denied mandamus relief. On petition for writ of mandamus to this Court, the disputed issues are (1) whether the FAA governs, (2) whether Clements's *Sabine Pilot* claim, which implicates alleged illegal activity, "arises out of [NEXT's] business activities," and (3) whether a *Sabine Pilot* claim is a statutory employment discrimination claim that triggers an exception to required arbitration. Neither the validity of the arbitration agreement nor the applicability of the 2007 NASD rules is in dispute. Although Clements signed the U–4 before the NASD arbitration rules were amended to their current form in 2007, Clements agreed to be bound by the NASD rules as they "may be amended from time to time."[3]

Mandamus relief is appropriate when a trial court erroneously denies a motion to compel arbitration pursuant to an agreement governed by the FAA. *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex.2005). The FAA applies to "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction...." 9 U.S.C. § 2 (2006). Courts have consistently held that the FAA applies to U–4 arbitration agreements because they regulate the securities industry and thus affect commerce, a point Clements does not contest. *See, e.g., Seus,* 146 F.3d at 178–79; *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659–60 (5th Cir.1995). Clements contends, however, that his at-will employment relationship with NEXT precludes applicability of the FAA because his non-contractual wrongful termination claim does not arise out of a contract evidencing a commercial transaction.

Under the FAA's plain language, an arbitrable dispute can arise out of *either* the contract containing the arbitration clause *or* a transaction evidenced by the contract. *See* 9 U.S.C. § 2. While Clements's wrongful termination claim may not arise out of a written employment contract, "the cre-

---

**2.** "Churning" refers to the excessive buying and selling of securities without authorization, usually to increase a broker's commissions. *See, e.g., Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., Inc.,* 310 F.3d 1321, 1324 (11th Cir.2002) (referencing 17 C.F.R. 33.10(a)). Churning violates antifraud provisions of the federal securities laws and SEC regulations. *See, e.g.,* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–1, .10b–3, .10b–5).

**3.** *See also Gardner v. Benefits Commc'ns Corp.,* 175 F.3d 155, 158 (D.C.Cir.1999) ("[W]e must look to NASD's rules and by-laws in effect when [suit was filed] to determine whether [the] discrimination claims were subject to the arbitration clause."); *Seus v. John Nuveen & Co.,* 146 F.3d 175, 187 (3d Cir. 1998) ("Most courts have found that the Form U–4 compliance clause obligates a registrant to comply with the NASD Arbitration Code as it existed at the time she filed suit."); *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 320–21 (9th Cir.1996) (same).

ation of an employment relationship ... is a sufficient 'transaction' to fall within section 2 of the [Federal Arbitration] Act." *Dickstein v. du Pont*, 443 F.2d 783, 785 (1st Cir.1971); *see also White–Weld & Co. v. Mosser*, 587 S.W.2d 485, 487 (Tex.Civ. App.-Dallas 1979, writ ref'd n.r.e.) (holding that the FAA governed an employee's suit for commissions owed by his employer because an employment relationship constitutes a transaction involving commerce). Moreover, this Court has held that tort claims and other extra-contractual claims can arise from a commercial transaction and thus may be subject to arbitration agreements made under the FAA. *See In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 516 (Tex.2006). We therefore hold that the FAA applies to this dispute.

■ In addition, NEXT is a clearly intended third-party beneficiary of the U–4 and may compel arbitration in accordance with the terms of that agreement, even though NEXT is not a signatory to the U–4. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 230 (3rd Cir.1998) (holding that an employer was an intended third-party beneficiary of a U–4 and could compel arbitration); *cf. In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex.2006) (holding that an intended third-party beneficiary of an arbitration agreement could compel arbitration).

■ We turn now to the principal dispute in this case, which is whether Clements's *Sabine Pilot* claim falls within the scope of the arbitration agreement and, if so, whether an exception removes his claims from mandatory arbitration. In resolving these issues, we are mindful that the scope of an arbitration agreement must be broadly interpreted in light of the federal policy favoring arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001); *see* 9 U.S.C. §§ 1–307 (the

Federal Arbitration Act). Conversely, when exceptions to an arbitration agreement are at issue, we construe the exceptions narrowly in light of the federal policies favoring arbitration and disfavoring broad interpretations of exceptions, "lest they overwhelm the rule." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 711 (4th Cir.2001); *see* 9 U.S.C. §§ 1–307.

■ We first consider whether Clements's claim falls within the general class of "business activities" claims that are compelled to arbitration under the NASD Code. Clements argues that his claim does not arise from NEXT's business activities because the claim is based on NEXT's alleged illegal actions. The current version of the arbitration provision in the NASD Code was adopted in 2007 and states that arbitration is required if a claim "arises out of the business activities of [an NASD] member...." NASD Code § 13200(a). NASD members are securities firms. *See* 17 C.F.R. § 240.15b7–1. Between 1993 and 2007 (and at the time Clements executed the arbitration agreement in 2006), the NASD Code explicitly provided for arbitration of claims "arising out of or in connection with the business of any member ... or arising out of the employment or termination of employment." 58 Fed.Reg. 39070 (July 21, 1993) (emphasis omitted) (text of proposed rule); *see also* 58 Fed.Reg. 45932–33 (Aug. 31, 1993) (SEC order adopting the proposed rule change effective October 1, 1993). Clements argues that the 2007 change in the NASD Code's language evinces an intent to narrow the scope of arbitrable claims to exclude employment-related disputes. We disagree.

■ In 2007, the NASD and the enforcement arm of the New York Stock Exchange (N.Y.SE), which had maintained

its own arbitration rules, were preparing to merge to form the Financial Industry Regulation Authority (FINRA). *See supra* note 1. At that time, NYSE's arbitration rules required arbitration of any claim "arising out of the employment or termination of employment of a registered representative...." 72 Fed.Reg. 45078 (Aug. 10, 2007) (quoting NYSE R. 347(a) (2007)). NASD's rule was similar. However, shortly before the merger, NASD amended the NASD Code's language to its present form. Despite the modification in the NASD Code, the SEC's commentary on the merger explicitly indicated that, following the merger, employment and employment termination claims would "continue to be covered by NASD DR Rule 13200(a)." 72 Fed.Reg. 45078. Thus, the "business activities" language in the current version of NASD rule 13200(a) is inclusive of employment and employment termination claims, which is confirmed by the SEC's commentary.

In addition, effective January 1, 1999 and continuing to date, statutory employment discrimination and sexual harassment claims have been excluded from compelled arbitration under NASD rules. *See* NASD Code § 13201; 63 Fed.Reg. 35303 (June 29, 1998) (SEC order approving rule change). There would be no reason to have such an exception if employment-related disputes were excluded from mandatory arbitration.

Furthermore, cases interpreting similar language in the pre–1993 NASD Code, which required arbitration for "a[ny] dispute, claim, or controversy arising out of or in connection with the business of any member ...," held that claims arising from employment-related disputes were subject to arbitration under the NASD Code. *See, e.g., Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 799 (10th Cir. 1995) (following most other federal circuits

in holding that employment disputes were compelled to arbitration by the pre–1993 NASD Code, largely due to "the requirement to construe arbitration clauses broadly where possible" (citing cases from other federal courts)); *Singer v. Jefferies & Co.,* 78 N.Y.2d 76, 571 N.Y.S.2d 680, 575 N.E.2d 98, 99, 101–04 (N.Y.1991) (holding that the employee's claim for injury to reputation resulting from the employer's alleged use of him as "an unwitting pawn" in securities fraud was subject to arbitration because the employer's wrongful conduct involved "significant aspects" of the employer's business activities); *Skewes v. Shearson Lehman Bros.,* 250 Kan. 574, 829 P.2d 874, 882 (1992) (holding that an employee's retaliatory discharge claim "arose out of or in connection with [the employer's] business" even though the employee claimed he was terminated in retaliation for filing a wage claim).

Although the language in the pre–1993 NASD Code differs from the language in the current version of the Code, the language in the current Code—"arising out of"—is not appreciably narrower than the language of the former Code—"arising out of or in connection with." The Fifth Circuit has stated that arbitration agreements that require arbitration for claims "arising out of the contract" are narrower than those that require arbitration for claims that are "connected with the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir.1998). But in construing contracts generally, this Court has stated that " 'arising out of' are words of ... broad[ ] significance...." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 203 (Tex.2004) (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.,* 189 F.2d 374, 378 (5th Cir.1951)). We do not perceive such a significant difference in the breadth of these terms that

one version would include employment-related disputes and the other would not.

At least one other court has concluded that a tort claim arising from a securities broker's illegal conduct "arose out of" the brokerage firm's business and was subject to arbitration based on the arbitration provision in the U–4 and the pre–1993 NASD rules. In *Singer v. Jefferies*, a securities-industry employee claimed that his employer's conduct made him appear complicit in the employer's securities-fraud crime. 571 N.Y.S.2d 680, 575 N.E.2d at 100. The court opined, "To hold that such a dispute does not arise out of the firm's business is unrealistic and inconsistent with the Federal policy requiring liberal, indeed generous, interpretation of arbitration agreements." *Id.* at 102. In so holding, the court relied on the federal policy favoring arbitration and "the arising out of" language rather than the broad "in connection with" language in the NASD Code. *Id.* at 101–02. Similarly, although Clements's retaliatory discharge claim is premised on NEXT's allegedly illegal activities, the alleged conduct involves "significant aspects" of NEXT's legitimate business activities, bringing the dispute within the scope of the NASD arbitration clause.

■ Our inquiry does not end there, however, because Clements contends that his *Sabine Pilot* wrongful termination claim is excepted from compelled arbitration as a "claim alleging employment discrimination ... in violation of a statute." NASD Code § 13201. Although Clements concedes that Rule 13201 generally does not except common law claims, he argues that his *Sabine Pilot* claim is inherently different because NEXT's act of terminating him for refusing to commit a criminal act constitutes a violation of the Texas Penal Code, which criminalizes threats made against a witness or prospective witness. TEX. PEN.CODE § 36.06(a). Relying on the doctrine of last antecedent, Clements severs the "statutory discrimination exception" into two separate elements and offers the following analytical construct: To satisfy the "employment discrimination ... in violation of a statute" exception, (1) the claim must allege employment discrimination, and (2) the conduct constituting discrimination must violate some statute, but not necessarily a statute intended to address employment discrimination in particular. Based on his construction of the exception, Clements concludes that a *Sabine Pilot* wrongful termination action is a "claim alleging employment discrimination" and such discrimination was "in violation of a statute," section 36.06 of the Texas Penal Code.

Clements's strained interpretation is contrary to the plain meaning and intent of the NASD Code, to which this Court must give effect. *See J.M. Davidson v. Webster*, 128 S.W.3d 223, 229 (Tex.2003) ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding that states generally "should apply ordinary state-law principles" to determine whether the parties agreed to arbitrate a particular issue). The plain language of the NASD Code confirms that Rule 13201 does not except common law discrimination claims, which is substantiated by the SEC's commentary and conceded by Clements. 62 Fed.Reg. 66166–67 (Dec. 17, 1997) (stating that the statutory discrimination exception in the NASD Code "does not apply to causes of action created solely by judicial precedents"). The most natural reading of this rule is that it applies only to violations of statutes proscribing employment discrimi-

nation. Indeed, the rule is entitled "Statutory Employment Discrimination Claims." NASD Code § 13201. We do not view a *Sabine Pilot* claim as a "discrimination claim," but even if it were, it is not a *statutory* discrimination claim, nor is it converted into one merely because the underlying conduct might actually constitute a violation of some other type of statute. *See* 62 Fed.Reg. 66167 n. 28 ("Such judicially created causes of action might include, for example, claims alleging 'wrongful discharge' without any accompanying claim of discrimination on account of age, sex, race, or other status protected by a specific law.").

We therefore hold that Clements's *Sabine Pilot* claim is subject to arbitration under the NASD rules. Because the trial court abused its discretion in refusing to compel arbitration, we conditionally grant the writ of mandamus without hearing oral argument, *see* TEX.R.APP. P. 52.8(c). The trial court is directed to vacate its order denying NEXT's motion to compel arbitration and enter an order compelling arbitration of Clements's claims. We are confident that the trial court will comply, and this writ will issue only if it does not.