GRIFFIN, J.
 

 Ann R. Eppinger [“Eppinger”] appeals the trial court’s non-final order granting
 
 *70
 
 Prager, Sealy
 
 &
 
 Co. LLC’s [“Prager Sealy”] motion to compel arbitration. Ep-pinger argues that the trial court erred by granting Prager Sealy’s motion to compel arbitration. We agree that the allegations in her complaint do not raise an arbitrable issue and reverse.
 

 Eppinger and Douglas J. Sealy [“Sealy”] joined Prager Sealy’s predecessor in 1991, opening the company’s Orlando office and serving as managing directors. In 1993, Eppinger and Sealy married each other. Both continued their work at the company, but Eppinger decreased her workload and responsibilities with the birth of each of their two children. Ep-pinger’s and Sealy’s marriage ended in 2006 with a mediated settlement agreement [“MSA”] being incorporated into the final judgment of dissolution. Included in the MSA was a provision that Eppinger would remain an employee of Prager Sealy for a specified term. Eppinger was later terminated from Prager Sealy after Prager Sealy unsuccessfully attempted to have Eppinger enter into a Separation Agreement and General Release.
 

 In June of 2008, Eppinger filed a five-count complaint against Sealy and Prager Sealy to enforce Sealy’s and Prager Sealy’s obligations under the MSA. Eppinger alleged that Sealy and Prager Sealy were obligated to pay her sums as provided for under paragraph 7 of the MSA:
 

 7.
 
 Employment by Prayer, Sealy and Company:
 

 Ms. Eppinger shall continue as an employee with Prager, Sealy & Company, LLC for a five year period commencing with the execution of this agreement, with a salary of $120,000.00 per year, payable monthly. Ms. Eppinger shall continue to be the lead banker for Villages of Lake-Sumter, Inc., or its successors and will receive 70% of all gross revenues generated from any such bond issues, payable at the same time as other bonuses are paid by the Company. Mr. Sealy guarantees that Ms. Eppinger will be paid a bonus of at least $650,000 annually regardless of whether Villages produces revenues or not. The above payments are to be made by February 15th of the succeeding year for the prior year, subject to regulatory requirements and February 15th of each year thereafter. This guarantee shall be null and void if Ms. Eppinger remarries within the five year period, but all other provisions shall remain in effect. Ms. Ep-pinger shall also enjoy health insurance benefits as provided to employees as well as participate in all other similar benefits available through Prager, Sealy & Company, LLC, with its employees.
 

 Eppinger alleged that, even though Sealy and Prager Sealy operated under the MSA for more than one year, they failed to fully perform. Sealy told her that neither he nor Prager Sealy was required to pay her the “salary” and “bonuses” called for under the MSA because he was not, at the time he executed the MSA, authorized to bind Prager Sealy and Prager Sealy never did accept its obligations under the MSA.
 

 Sealy answered Eppinger’s complaint and asserted affirmative defenses and counterclaims. Prager Sealy filed a motion to dismiss, to compel arbitration and to stay discovery. In its motion, Prager Sealy alleged that Eppinger executed a Form U-4 “[a]t the start of her employment in 1991, ... which requires her to arbitrate any dispute, claim or controversy that might arise” and that she subsequently executed a Predispute Arbitration Clause, which related to the Form U-4, in both 2003 and 2006.
 

 The Form U-4 attached to the motion is entitled “UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGIS
 
 *71
 
 TRATION OR TRANSFER” and contains the following arbitration clause: “I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organization indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement [sic] in any court of competent jurisdiction.” Eppinger’s signature appears on the form.
 

 The Predispute Arbitration Clause provides:
 

 In accordance with the NASD Conduct Rules, the following disclosure is being provided to you in connection with your Form U-4 application or Form U-4 amendment(s):
 

 The Form U-4 contains a predispute arbitration clause. It is in item 5 on page 4 of the Form U-4. You should read that clause now. Before signing the Form U-4, you should understand the following:
 

 (1.) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means that you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
 

 (2.) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under NASD rules. Such a claim may be arbitrated at the NASD only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different
 

 [[Image here]]
 

 Sealy responded to Prager Sealy’s motion, asserting:
 

 5. In sum, [Prager Sealy’s] Motion to Compel Arbitration is limited, by its own terms, to arbitration of claims between [Prager Sealy] and Eppinger; [Prager Sealy] has not cited or invoked an agreement to compel Sealy to arbitrate the claims Eppinger has asserted against [Prager Sealy]; and Eppinger and Sealy have committed their separable claims against one another to the jurisdiction of this Court. Accordingly, Sealy submits that [Prager Sealy’s] Motion to Compel Arbitration should be Granted, insofar as it is limited to compelling arbitration of claims Eppinger has asserted against [Prager Sealy].
 

 Eppinger filed a memorandum in opposition to Prager Sealy’s motion. She attached a BrokerCheck Report to her memorandum showing that Eppinger held FINRA
 
 [1]
 
 registration with Prager Sealy from May of 1993 through March of 2008. The trial court conducted a hearing and entered an order granting Prager Sealy’s motion to dismiss and compel arbitration, and to stay discovery.
 

 Eppinger’s central argument on appeal is that her claims and the facts on which they are based as alleged in her complaint do not give rise to an arbitrable issue and
 
 *72
 
 that the trial court erred in granting Prager Seales motion to compel arbitration. Prager Sealy counters that, although Ep-pinger relies upon the terms of the MSA in bringing her claims, her claims are “grounded on her employment relationship with the company.” Prager Sealy contends that, under the rules of arbitration applicable to FINRA, arbitration was required because the dispute arose out of her employment or termination of employment. Therefore, the question becomes whether the rules of arbitration applicable to FINRA require arbitration of the instant dispute.
 

 At the time the instant dispute arose, the NASD Code of Arbitration Procedure for Industry Disputes [“NASD Arbitration Code”] constituted the rules of arbitration applicable to FINRA.
 
 [2]
 
 Section 13200 of the NASD Arbitration Code provides in pertinent part:
 

 Required Arbitration
 

 (a) Generally
 

 Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
 

 • Members;
 

 • Members and Associated Persons; or
 

 • Associated Persons.
 
 [3]
 

 Based upon the language of section 13200(a), the dispute between Eppinger and Prager Sealy must be arbitrated if it arose out of the “business activities” of either Eppinger or Prager Sealy. Relying upon
 
 Seifert v. U.S. Home Corp.,
 
 750 So.2d 633 (Fla.1999), Eppinger contends that the dispute did not arise out of her or Prager Sealy’s “business activities” because the allegations in her complaint do not suggest a nexus between the dispute and the agreement containing the arbitration clause, namely the Form U-4.
 

 In Seifert> the Florida Supreme Court addressed “whether the terms of an arbitration provision in a contract for the sale and purchase of a house require[d] [a] wrongful death action to be arbitrated.”
 
 Id.
 
 at 635. The arbitration provision required arbitration of “[a]ny controversy or claim arising under or related to” the purchase and sale agreement.
 
 Id.
 
 The Florida Supreme Court analyzed “the governing principles surrounding the determination of whether a particular claim is subject to arbitration” and concluded: “As the prevailing case law illustrates, even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the. existence of some nexus between the dispute and the contract containing the arbitration clause.”
 
 Id.
 
 at 638.
 

 While there does not appear to be Florida case law directly on point, a recent California case supports application of the “nexus” requirement in this context. In
 
 Valentine Capital Asset Mgmt., Inc. v. Again,
 
 174 Cal.App.4th 606, 94 Cal.Rptr.3d 526, 534 (2009), a California appellate court addressed the scope of “business activities” that are subject to arbitration under FINRA Rule 13200,
 
 [4]
 
 stating:
 

 
 *73
 
 Since there must be some limit to the scope of “business activities” subject to mandatoiy arbitration under FINRA, we must next find an appropriate means of defining the limitation. We need look no further than the words of Rule 13200 itself. The mandate to arbitrate disputes arising out of “business activities of ... an associated person,” reasonably read, must require arbitration of disputes only if they arise out of the business activities of an individual
 
 as
 
 an associated person of a FINRA member. With this interpretation, FINRA and the registered representatives under its jurisdiction are assured that arbitration will pertain to matters with some nexus to the activity actually regulated by FINRA. This is nothing more than the common sense meaning of the plain language contained in Rule 13200, and any other interpretation would wrongly strip individuals of their civil jury trial rights concerning subject matter in which FINRA maintains no regulatory interest.
 

 Id.
 
 (emphasis in original). As
 
 Valentine
 
 suggests, a dispute arises out of “business activities” if there exists a nexus between the dispute and an activity regulated by FINRA. The allegations of Eppinger’s complaint concern whether Prager Sealy is obligated under the MSA to pay certain sums to Eppinger as a result of the dissolution of her marriage to Sealy. The dispute arises out of the agreement that obligated Prager Sealy to employ Eppinger; it does not arise out of the employment itself. The dispute does not involve activities on the part of either Eppinger or Prager Sealy that are regulated by FIN-RA. Therefore, there does not exist a nexus between the dispute and the “business activities” of Eppinger or Prager Sealy.
 

 Prager Sealy asserts that section 13200(a) of the NASD Arbitration Code covers employment and employment termination claims. In support of its assertion, Prager Sealy cites a footnoted comment made by the SEC in relation to the consolidation of the regulatory functions of NASD and NYSE Regulation.
 
 [5]
 
 The SEC’s comment provides in pertinent part:
 

 [NYSE] Rule 347(a) provides that a controversy between a registered representative and a member organization “arising out of the employment or termination of employment of such registered representative” shall be arbitrated at the request of any party. These employment claims will continue to be covered by NASD DR Rule 13200(a), which requires the arbitration of disputes arising out of the “business activities” of a member or an associated person and is between or among members, members and associated persons, or associated persons. Accordingly, [NYSE] Rule 600 will be amended to provide that [NYSE] Rule 347 will apply only to claims filed before the Effective Date.
 
 [6]
 

 Prager Sealy also relies on
 
 In re NEXT Financial Group, Inc.,
 
 271 S.W.3d 263, 268 (Tex.2008), for the proposition that section 13200(a) covers employment and termination of employment claims for NASD members. In
 
 NEXT,
 
 the Texas Supreme Court found that a securities broker’s wrongful discharge claim was required to be arbitrated under the NASD Arbitration Code because, “although [the
 
 *74
 
 securities broker’s] retaliatory discharge claim [was] premised on NEXT’S allegedly illegal activities, the alleged conduct involve[d] ‘significant aspects’ of NEXT’S legitimate business activities, bringing the dispute within the scope of the NASD arbitration clause.”
 
 Id.
 
 at 269. The wrongful discharge claim was predicated upon NEXT having allegedly “fired [the securities broker] for refusing to conceal a trader’s fraudulent ‘churning’ transactions.”
 
 Id.
 
 at 265.
 

 Although
 
 NEXT
 
 may be some authority in support of Prager Sealy’s position, it does not take them far. The Texas Supreme Court’s decision in
 
 NEXT
 
 was based upon its finding that NEXT’S “alleged conduct involve[d] ‘significant aspects’ of NEXT’S legitimate business activities, bringing the dispute within the scope of the NASD arbitration clause.”
 
 Id.
 
 at 269. This comes very close to “nexus.” In
 
 NEXT,
 
 the alleged discharge for a failure to conceal fraudulent churning related to NEXT’S regulated business activities in the securities industry. In this case, the failure to pay Eppinger certain sums under the MSA has no connection to Prager Sealy’s regulated business activities.
 

 In
 
 Singer v. Gaines,
 
 896 So.2d 851, 854-55 (Fla. 3d DCA 2005), the Third District Court of Appeal addressed whether a claim for fraudulent inducement presented an arbitrable issue under a prior version of the NASD Arbitration Code that explicitly provided for arbitration of claims arising out of employment or termination of employment. The appellant argued that his claim for fraudulent inducement was based on false representations made by the ap-pellees prior to his entry into the employment contract and that, as such, it fell outside the scope of the arbitration provision.
 
 Id.
 
 at 854. The Third District Court of Appeal said:
 

 Rule 10201(a) requires that claims “arising out of the employment or termination of employment of such associated person(s)” be submitted to arbitration. This requirement does not mean that the controversy must arise from an employment contract; it simply requires that the controversy arise from employment or termination of employment.
 
 Bielfeldt v. Nims,
 
 805 N.E.2d 415, 420 (Ind.Ct.App.2004). In determining whether a controversy arises out of employment or termination, “ ‘the proper question is whether resolution of the claim depends upon evaluation of a party’s performance either as a broker or as an employer of brokers during the time of the contractual relationship.’ ”
 
 Northwestern Mut. Life Ins. Co. v. Stinnett,
 
 698 N.E.2d 339, 342 (Ind.Ct.App.1998) (quoting
 
 Zandford v. Prudential-Bache Secs., Inc.,
 
 112 F.3d 723, 729 (4th Cir.1997)).
 

 Id.
 

 Here, resolution of Eppinger’s claims does not appear to involve evaluation of either Prager Sealy’s performance as an employer of brokers or Eppinger’s performance as a broker-employee. To the contrary, Prager Sealy contends it has no contractual relationship giving rise to a duty to employ Eppinger. This is not a Form U-4 arbitrable issue.
 

 REVERSED and REMANDED.
 

 PALMER and JACOBUS, JJ., concur.
 

 [1]
 

 . In July of 2007, NASD’s name was changed to FINRA "in connection with the consolidation of the member firm regulatory functions of NASD and NYSE Regulation." Order Granting Accelerated Approval of Proposed Rule Change and Amendment No. 1 Thereto Relating to Proposed Amendments to Rule 600, 72 Fed. Reg. 45077-02 n. 7 (Aug. 10, 2007).
 

 [2]
 

 .
 
 See
 
 FINRA, Industry Professionals, Regulation, Notices, 2008, Information Notice-December 8, 2008,
 
 Continuing Application of NASD Rules and Incorporated NYSE Rules,
 
 http://www.finra.org/Industry/Regulation/ Notices/2008/P 117507.
 

 [3]
 

 . NASD Code of Arbitration Procedure for Industry Disputes § 13200(a) (effective Apr. 16, 2007),
 
 available at
 
 http://finra.complinet. com/en/display/display main.html?rbid=2403&element id= 8043.
 

 [4]
 

 .The language of FINRA section 13200(a) mirrors the language of NASD section 13200(a).
 

 [5]
 

 . Order Granting Accelerated Approval of Proposed Rule Change and Amendment No. 1 Thereto Relating to Proposed Amendments to Rule 600, 72 Fed. Reg. 45077-02 n. 11 (Aug. 10, 2007).
 

 [6]
 

 .
 
 Id.