# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00057-CV

**John McArdle, Appellant**

**v.**

**Jack Nelson IRA; Cathy Nelson, as Trustee of the Cathy Nelson IRA; Cathy Nelson, as Trustee of the Jack Nelson 99 Charitable Remainder Trust; and Jack Nelson and Cathy Nelson, as Trustees of the Nelson Family Trust, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-03-003850, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

John McArdle appeals from a judgment confirming appellees' ("the Nelsons'") arbitration award. McArdle was an incorporator, director, and shareholder of a securities-trading firm called Self Trading Securities, Inc. ("STS"). The Nelsons invested money through a securities broker affiliated with STS, and when those investments failed they sought to recoup their losses through arbitration. A three-member arbitration panel awarded the Nelsons $175,000 against McArdle, who then unsuccessfully sought to vacate that award in the district court. On appeal, McArdle argues that the arbitrators lacked jurisdiction over him and over the Nelsons' tort-based claims. We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

McArdle incorporated STS in March of 1995. STS's articles of incorporation, which McArdle signed, named McArdle as STS's incorporator and chairman of its initial board of directors. McArdle hired John Pearson to be STS's president. In April 1995, Pearson signed and filed a Uniform Application for Broker-Dealer Registration ("Form BD") for STS with the Securities and Exchange Commission, the Texas Secretary of State, and the National Association of Securities Dealers ("the NASD").[1] The form stated that McArdle was a "control person" of STS and held "75% or more" of STS's stock. The form also stated that Pearson held "less than 5%" of STS's stock[2] and that STS had no other stockholders. At some point shortly after the form was filed, though, Thomas E. Holmes and Jay McArdle apparently also became STS stockholders.

McArdle incorporated another company, Self Trading Holding, Inc. ("Holding"), in October of 1995. Except for the name of the entity, Holding's articles of incorporation were identical to STS's; they were signed by McArdle and named McArdle as the company's incorporator and chairman. On November 1, 1995, Holding allegedly entered into a stock-exchange agreement with the three STS stockholders. Under the agreement, Holding allegedly acquired all of their STS

---

[1] The NASD is a "a self-regulatory organization overseeing securities transactions." *In re Next Fin. Group, Inc.*, 271 S.W.3d 263, 265 (Tex. 2008) (per curiam) (orig. proceeding). It absorbed the enforcement arm of the New York Stock Exchange and became the Financial Industry Regulation Authority (FINRA) on July 30, 2007. *Id.* For purposes of this appeal, we will continue to refer to the organization as the NASD. Securities brokers must register with and abide by the regulatory policies of the NASD or another national securities association. 17 C.F.R. § 240.15b7-1 (2009). The NASD is the largest such organization. http://www.finra.org/AboutFINRA/ (last visited Feb. 1, 2010).

[2] "5% or less" is the lowest designation available on the form, and in fact it appears that Pearson actually held no STS stock.

2

stock in exchange for comparable shares of Holding stock. Once the exchange was completed, Holding allegedly owned all STS stock and McArdle, Thomas Holmes, and Jay McArdle allegedly owned all Holding stock.

We say "allegedly" because while the record contains the signed "Exchange Agreement" that appears to evidence the stock exchange, it also contains a Form BD amendment subsequently filed by STS in December 1995 that stated (1) McArdle, Holmes, and Jay McArdle continued to own all STS stock and (2) McArdle was still an STS "control person." The amendment form also contained the following language:

> Failure to keep this form current and to file accurate supplementary information on a timely basis . . . would violate the Federal securities laws and the laws of the jurisdictions and may result in disciplinary, administrative, injunctive or criminal action . . . . The undersigned and applicant represent that the information and statements contained herein . . . are current, and complete.

Thus, even though the Exchange Agreement appears to support McArdle's claim that he owned no shares of STS stock after November 1, 1995, the form BD amendment that STS subsequently filed with securities regulators showed otherwise. STS never filed another Form BD amendment or anything else indicating that McArdle relinquished his STS stock or his positions as "control person" and chairman of STS. Indeed, as of August 6, 2003, the records of the Central Registration Depository[3] indicated that McArdle was still an STS shareholder and "employee." Furthermore, in

---

[3] The Central Registration Depository (CRD) is "the securities industry online registration and licensing database. Information in CRD is obtained through forms that brokers, brokerage firms and regulators complete as part of the securities industry registration and licensing process." http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/index.htm (last visited Feb. 1, 2010). "The CRD is the main repository for current registrant data." *Gold v. SEC*, 48 F.3d 987, 988 n.2 (7th Cir. 1995).

a letter to the Texas Secretary of State dated September 25, 2000, McArdle represented that he was STS's president.

Some time between 1995 and 2001, STS entered into a business relationship with an independent securities broker named Eric Weschke. STS provided Weschke with market access. In 2001, the Nelsons contacted Weschke about placing investment funds under his management. The Nelsons eventually grew dissatisfied with Weschke's services and filed an arbitration proceeding against him with the NASD. They also eventually named McArdle, STS, and John Pearson as respondents in their arbitration demand.

Weschke settled with the Nelsons before arbitration commenced. The arbitration panel also eventually dismissed STS and Pearson, but it awarded the Nelsons $175,000 against McArdle. McArdle filed a Petition to Vacate Arbitration Award in Travis County district court. The court subsequently remanded the case to the arbitration panel for additional discovery and for reconsideration of McArdle's argument that the NASD lacked jurisdiction over him. After the additional discovery occurred, the arbitration panel conducted a second hearing, specifically found that it had jurisdiction over McArdle, and reaffirmed its $175,000 award.

McArdle again petitioned the district court to vacate the arbitration award. The Nelsons moved for summary judgment confirming the arbitration award. The court granted the Nelsons' motion, and McArdle perfected this appeal.

**STANDARD OF REVIEW**

The parties agree that the Federal Arbitration Act (FAA) governs this case. *See* 9 U.S.C.A. §§ 1-16 (West 2009). We review de novo a trial court's confirmation of an arbitration

award under the FAA. *Ancor Holdings, LLC v. Peterson, Goldman, & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.). In doing so, we apply federal law. *See Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam) (orig. proceeding). Our review of the substance of an arbitration award is "extraordinarily narrow." *Ancor Holdings*, 294 S.W.3d at 826 (citations omitted). That is to say, we indulge all reasonable presumptions to uphold the arbitrator's decision. *Id*. We presume the arbitration award is valid and accord it great deference. *Id*. "Importantly, our review is so limited that we may not vacate an award even if it is based upon a mistake in law or fact." *Id*.

We apply a far less deferential standard of review, however, to an arbitration panel's determination that it has jurisdiction over particular parties or claims. *See Kaplan v. First Options of Chicago, Inc*., 19 F.3d 1503, 1512 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995) ("An arbitrator's decision to assert jurisdiction over objection is . . . subject 'to a much broader and more rigorous judicial review' than an arbitral decision on the merits.") (quoting *International Bhd. of Teamsters, Local 249 v. Western Pa. Motor Carriers Ass'n*, 574 F.2d 783, 787 (3d Cir. 1978)). That is to say, we review de novo an arbitration panel's jurisdictional determinations. *Id*. An arbitration panel may properly exercise jurisdiction over particular parties and claims only when there is "evidence sufficient to establish the parties' consent to arbitration." *Id*.

**DISCUSSION**

McArdle raises two points of error: (1) the NASD arbitration panel ("the panel") lacked subject-matter jurisdiction over the Nelsons' claims because the claims were tort-based and not interwoven with a contract; and (2) the panel lacked personal jurisdiction over McArdle because

5

he never agreed to arbitrate the Nelsons' claims. In arguing these points of error, McArdle repeatedly suggests that the arbitration panel reached erroneous conclusions of law and fact.[4] Even if he is right, legal and factual errors are not grounds on which a court can vacate an arbitration award. *See Ancor Holdings*, 294 S.W.3d at 826 ("[W]e may not vacate an award even if it is based upon a mistake in law or fact."); *In re Poly-America, L.P.*, 262 S.W.3d 337, 362 (Tex. 2008) (Brister, J., dissenting) ("Both federal and state law require courts to enforce an arbitrator's decision, no matter what it is, with very few exceptions. The allowable exceptions . . . do not include (as the Supreme Court just held) disregarding the law, even if a legal error is 'manifest.'") (citations omitted); *GMS Group, LLC v. Benderson*, 326 F.3d 75, 77 (2d Cir. 2003) (even "clear error in fact" is insufficient to warrant disturbing arbitration award). Thus, the panel's alleged legal and factual errors will not factor into our analysis of McArdle's points of error.

A court may vacate an arbitration award in four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators . . . ;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(a). McArdle seems to argue that the panel violated subsection (3) (because it

---

[4] For example, he argues that he was not a "control person" or shareholder of STS when Weschke harmed the Nelsons; that Texas corporate law does not allow the Nelsons to pierce STS's corporate veil and hold McArdle responsible for STS's liabilities; and that Texas law does not allow tort-based recovery when economic loss flows solely from the subject matter of a contract.

6

engaged in "misbehavior by which the rights of [a] party have been prejudiced") and subsection (4) (because it "exceeded [its] powers"). Because McArdle's complaints are essentially jurisdictional in nature, we think subsection (4) is the proper focus of his appeal. *See Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 331 (7th Cir. 1995) (treating argument that arbitrator lacked jurisdiction as argument that arbitrator exceeded his powers).[5]

An arbitration panel does indeed "exceed its powers" if it presides over claims or persons beyond its jurisdiction. *See Kaplan*, 19 F.3d at 1523 (district court should have vacated arbitration award where arbitrators lacked jurisdiction over appellant). Arbitrators' jurisdiction extends only to matters that the parties have agreed to arbitrate. *Id*. at 1512.

### First Point of Error

McArdle argues that the Nelsons' claims were beyond the panel's jurisdiction because they were tort-based and not "interwoven" with a contract. *See Fridl v. Cook*, 908 S.W.2d 507, 511 (Tex. App.—El Paso 1995, writ dism'd w.o.j.) (tort claims not arbitrable unless "interwoven" with a contract). "To determine whether [a] particular tort claim is subject to arbitration, the court must determine whether the particular tort claim is so interwoven with [a] contract that it could not stand alone or, on the other hand, is a tort completely independent of the contract and could be maintained without reference to the contract." *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 391 (Tex. App.—Houston [14th Dist.] 1993, writ denied). If a complainant need not even refer to a contract to maintain a tort claim, then there is no interweaving. *See id*.

---

[5] To the extent that subsection (3) is the proper focus, though, our conclusions do not change because we believe the panel acted properly (as the remainder of this opinion explains).

7

Here, it is clear that the Nelsons could not maintain their tort claims against McArdle without referring to a contract—specifically, their brokerage contract with Weschke. The Nelsons alleged that McArdle committed a tort by failing to supervise Weschke's management of their brokerage account. As a matter of logic, the Nelsons could not pursue this claim without referring to their brokerage contract with Weschke. Thus, the Nelsons' failure-to-supervise claim was interwoven with the contract and was arbitrable. *See id.*; *see also In re Next Fin. Group, Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (per curiam) (orig. proceeding) ("[T]ort claims and other extra-contractual claims can arise from a commercial transaction and thus may be subject to arbitration agreements made under the FAA."). We therefore overrule McArdle's first point.

### Second Point of Error

Our jurisdictional analysis does not end with the conclusion that the Nelsons' tort claims were arbitrable, because even hypothetically arbitrable claims are beyond arbitrators' jurisdiction if parties have not specifically agreed to arbitrate them. *See Kaplan*, 19 F.3d at 1512. We take this to be the substance of McArdle's second point of error—that even if the Nelsons' claims were hypothetically arbitrable, McArdle never agreed to arbitrate them and therefore the panel lacked personal jurisdiction over him. In support of this position, McArdle points out that he never signed an arbitration agreement (or any other contract for that matter) with the Nelsons.

This fact is beside the point. The panel had jurisdiction over McArdle because STS was a member of the NASD. NASD Code of Arbitration Procedure Rule 10301(a), which all NASD members must agree to abide by as part of their registration process, states:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of

8

such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Rule 10301(a).[6] The "Rule 10100 Series," specifically Rule 10101, applies this arbitration requirement to "any dispute, claim, or controversy arising out of or in connection with the business of any [NASD] member . . . between or among members or associated persons and public customers." NASD Rule 10101. In other words, "membership in the NASD, in and of itself, is a written agreement to arbitrate according to NASD submission rules." *First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co., Inc.*, 65 F. Supp. 2d 1371, 1377 (S.D. Fla. 1999).

STS was an NASD member, as its Form BD demonstrates and as McArdle admits. The Nelsons were STS's "customers." *See California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 318 (5th Cir. 2004). McArdle was an "associated person" of STS. *See* NASD By-Laws, Art. I (rr) ("'[A]ssociated person of a member' means . . . a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member.").[7] And "[a] dispute that arises from

---

[6] The NASD Code of Arbitration Procedure is available online at http://finra.complinet.com/en/display/display_viewall.html?rbid=2403&element_id=4033&record_id=11676 (last visited Feb. 1, 2010).

[7] This definition was located in another section of the NASD By-Laws when McArdle became an "associated person," *see John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 51 (2d Cir. 2001), but its substance is unchanged. In any event, as part of his NASD registration, McArdle agreed to abide by any revisions or amendments to the NASD's rules. *See Next Fin. Group*, 271 S.W.3d at 266.

McArdle never explicitly claims he was not an "associated person" of STS at the relevant times, but to the extent that his appellate briefs imply as much, the record indicates otherwise (as discussed above).

9

a firm's lack of supervision over its brokers arises in connection with its business." *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58-59 (2d Cir. 2001). Synthesizing all these elements, it is clear that McArdle was required to arbitrate the Nelsons' failure-to-supervise claim. *See* NASD Rule 10101 ("[A]ny dispute, claim, or controversy arising . . . in connection with the business of any [NASD] member . . . between . . . associated persons and public customers" is subject to arbitration.).

The same conclusion follows from the undisputed fact that McArdle personally submitted a Form U4 ("Uniform Application for Securities Industry Registration") to the NASD. The Form U4 contains a provision that "requires persons to submit to arbitration any claim that is eligible for arbitration under the rules of the organizations with which they register." *In re Relator Zachary C. Scott*, 100 S.W.3d 575, 578 (Tex. App.—Fort Worth 2003, no pet.). *See also Seus v. John Nuveen & Co.*, 146 F.3d 175, 186-87 (3d Cir. 1998) (filing U4 with NASD acts as agreement to arbitrate claims); *In re Next Fin. Group*, 271 S.W.3d at 269 ("[A] tort claim arising from a securities broker's illegal conduct 'arose out of' the brokerage firm's business and was subject to arbitration based on the arbitration provision in the U-4."). McArdle tries to avoid this conclusion by claiming that he filed the U4 for a limited purpose—"so he could conduct personal [securities] trades"—but he has provided no authority indicating that such intentions limit the scope of the U4's arbitration agreement. The evidence clearly shows that McArdle filed a Form U4 with the NASD, and that fact is dispositive. *See Scott*, 100 S.W.3d at 579 (An "agreement, in the Form U-4, to abide by the NASD's rules is an agreement to arbitrate all matters subject to arbitration under those rules.").

In sum, the panel had personal jurisdiction over McArdle because 1) he was an

associated person of STS, which was a member of the NASD, and 2) he personally filed a form U4 with the NASD. Thus, we overrule McArdle's second point of error.

**CONCLUSION**

The arbitration panel had subject-matter jurisdiction over the Nelsons' tort claims and personal jurisdiction over McArdle. Thus, the trial court did not err in confirming the panel's award against McArdle. We affirm.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   March 31, 2010