ACCEPTED
13-15-00278-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/20/2015 1:54:35 PM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00278-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/20/2015 1:54:35 PM
CECILE FOY GSANGER
Clerk

IN THE
THIRTEENTH COURT OF APPEALS
EDINBURG, TEXAS
13th JUDICIAL DISTRICT

## ADOLFO MORALES
v.
## OPHTHALMIC CONSULTANTS OF TEXAS, P.A.

On Appeal from the
444th District Court of Cameron County, Texas

## INTERLOCUTORY APPEAL

## JACKSON LEWIS P.C.

Victor N. Corpuz, Esq.
corpuzv@jacksonlewis.com
Texas Bar No. 04838450
Allyson L. Johnson, Esq.
johnsona@jacksonlewis.com
Texas Bar No. 24054005

500 N. Akard, Suite 2500
Dallas, Texas 75201
Phone:    (214) 520-2400
Fax:       (214) 520-2008

## LEAD ATTORNEYS FOR APPELLANT

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names, addresses, and telephone numbers of all counsel of record.

| **APPELLANT**: | **COUNSEL FOR APPELLANT**: |
|---|---|
| Ophthalmic Consultants of Texas, P.A. | Victor N. Corpuz, Esq. <br> corpuzv@jacksonlewis.com <br> Texas Bar No. 04838450 <br> Allyson L. Johnson, Esq. <br> johnsona@jacksonlewis.com <br> Texas Bar No. 24054005 <br> **JACKSON LEWIS PC** <br> 500 N. Akard, Suite 2500 <br> Dallas, Texas 75201 <br> Phone: (214) 520-2400 <br> Fax: (214) 520-2008 |
| **APPELLEE**: | **COUNSEL FOR APPELLEE**: |
| Adolfo Morales, M.D. | Larry Warner <br> Larrywarner1945@gmail.com <br> Texas Bar No. 20871500 <br> 3109 Banyan Circle <br> Harlingen, TX 78550 <br> Phone: (956) 454-4994 <br> Fax: (956) 230-0361 <br><br><br> John Shergold <br> hodgeshergold@aol.com <br> Texas Bar No. 00794624 <br> **HODGE & SHERGOLD, LLP** <br> 1534 East 6th Street, Suite 103 <br> Brownsville, Texas 78520 <br> Phone: (956) 548-9100 <br> Fax: (956) 548-9102 |

| **TRIAL COURT JUDGE**: | |
| --- | --- |
| The Honorable David Sanchez<br>444th District Court, Cameron County<br>974 E. Harrison, First Floor #5<br>Brownsville, Texas  78520<br>Phone:        (956) 547-7034 | |

# TABLE OF CONTENTS

**HEADING**                                                           **PAGE**

IDENTITY OF PARTIES AND COUNSEL ............................................................ i

TABLE OF CONTENTS .................................................................................iii-iv

TABLE OF AUTHORITIES ............................................................................v-viii

STATEMENT OF THE CASE..............................................................................1

ISSUES PRESENTED...........................................................................................3

STATEMENT OF FACTS .....................................................................................3

I. ARGUMENT AND AUTHORITIES ..................................................................5

    A.    Summary of Argument....................................................................5

    B.    Standard of Review .........................................................................6

    C.    The trial court erred by not submitting the dispute concerning
        enforceability of the Agreement to the Arbitrator. ......................8

    D.    The Agreement constitutes a valid agreement to arbitrate between the
        Parties. ...........................................................................................10

    E.    Dr. Morales's claims fall within the Agreement's scope............12

    F.    OCT Has Not Waived Its Right to Compel Arbitration..............13

        1.    OCT Has Not Substantially Invoked the Judicial Process.................14

        2.    Dr. Morales Cannot Show Prejudice.....................................16

II. CONCLUSION .................................................................................................18

III. PRAYER FOR RELIEF ..................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AT&T Techs., Inc. v. Commc'ns Workers of Am. et al.*,
    475 U.S. 643 (1986)..................................................................................7, 9

*Buckeye Check Cashing Inc. v. Cardegna*,
    546 U.S. 440 (2006)..........................................................................3, 6, 7, 9

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001).....................................................................................7

*Dallas Cardiology Assocs., P.A. v. Mallick*,
    978 S.W.2d 209 (Tex. App.—Texarkana 1998, writ denied) .............................7

*EZ Pawn Corporation v. Mancias*,
    934 S.W.2d 87 (Tex. 1996)....................................................................passim

*First Community Insurance Company and Boyd Construction v. F-Con
    Contractors, Inc.*,
    2000 Tex. App. Lexis 1655 (Tex. App.—Dallas March 14, 2000)..............13, 14

*Forest Oil Corp. v. McAllen*,
    268 S.W.3d 51 (Tex. 2008).........................................................................12

*Granite Constr. Co. v. Beaty*,
    130 S.W.3d 362 (Tex. App.—Beaumont 2004).................................................18

*Henry v. Gonzalez*,
    18 S.W.3d 684 (Tex. App.—San Antonio 2000, no writ)..............................7, 8

*Home Club, Inc. v. Barlow*,
    818 S.W.2d 192 (Tex. App.—San Antonio 1991, orig. proceeding).................17

*In re 24R, Inc.*,
    324 S.W.3d 564 (Tex. 2010) ..................................................................11, 12

*In re AdvancePCS Health L.P.*,
    172 S.W.3d 603 (Tex. 2005) (per curiam) .......................................................11

*In re Delta Homes, Inc.*,
  5 S.W.3d 237 (Tex. App.—Tyler 1999, orig. proceeding)................................18

*In re FirstMerit Bank*,
  52 S.W.3d 749 (Tex. 2001)..........................................................................7, 9

*In re Fleetwood Homes of Texas, L.P.*,
  257 S.W.3d 692 (Tex. 2008) ...........................................................................15

*In re Halliburton Co.*,
  80 S.W.3d 566 (Tex. 2002)........................................................................10, 11

*In re Hornbeck Offshore Corp.*,
  981 F.2d 752 (5th Cir. 1993) ...........................................................................12

*In re Merrill Lynch Trust Co. FSB*,
  235 S.W.3d 185 (Tex. 2007) ..............................................................3, 6, 7, 9

*In re Multifuels, L.P.*,
  2010 Tex. App. LEXIS 3576 (Tex. App.—Houston [1st Dist.] May 7,
  2010) ...............................................................................................................18

*In re Next Fin. Group, Inc.*,
  271 S.W.3d 263 (Tex. 2008) (per curiam) .........................................................7

*In re Oakwood Mobile Homes, Inc.*,
  987 S.W.2d 571 (Tex. 1999) ...............................................................8, 16, 17

*In re Odyssey Healthcare, Inc.*,
  310 S.W.3d 419 (Tex. 2010) ............................................................................11

*In re Permian Tank & MFG, Inc.*,
  306 S.W.3d 338 (Tex. App.—Eastland 2010, no pet.)........................................9

*In re Poly-America, L.P.*,
  262 S.W.3d 337 (Tex. 2008) ..............................................................................7

*In re Serv. Corp. Int'l*,
  85 S.W.3d 171 (Tex. 2002).......................................................................15, 16

*In re Tenet Healthcare, Ltd.*,
  84 S.W.3d 760 (Tex. App.—Houston [1st Dist.] 2002, no pet.)......................7, 8

*Interconex, Inc. v. Ugarov*,
  224 S.W.3d 523 (Tex. App.—Houston [1st Dist.] 2007)....................................13

*Interconex, Inc. v. Ugarov*,
  S.W.3d 2006 WL 2506562 (Tex. App.—Houston [1st Dist.] 2006, n.p.h.) .......13

*J.M. Davidson, Inc. v. Webster*,
  128 S.W.3d 223 (Tex. 2003) ....................................................................7, 10

*Jernigan v. Langley*,
  111 S.W.3d 153 (Tex. 2003) .........................................................................13

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
  289 S.W.3d 844 (Tex. 2009) .........................................................................11

*Mouton v. Metropolitan Life Ins. Co.*,
  147 F.3d 453 (5th Cir. 1998) ..........................................................................7

*Pennzoil Co. v. Arnold Oil Co., Inc.*,
  30 S.W.3d 494 (Tex. App.—San Antonio [4th Dist.] 2000).................15, 16, 18

*Pepe Intern. Dev. Co. v. Pub Brewing Co.*,
  915 S.W.2d 925 (Tex. App.—Houston [1st Dist.] 1996, no writ) ......................6

*Schroeder v. Texas Iron Works, Inc.*,
  813 S.W.2d 483 (Tex. 1991) .........................................................................14

*Steelworkers v. American Mfg. Co.*,
  363 U.S. 564 (1960).......................................................................................7

*Steelworkers v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960).......................................................................................7

*Sun Exploration & Prod. Co. v. Benton*,
  728 S.W.2d 35 (Tex. 1987).............................................................................13

*United Parcel Serv., Inc. v. McFall*,
  940 S.W.2d 716 (Tex. App.—Amarillo 1997, orig. proceeding).......................18

*Walker v. J.C. Bradford & Co.*,
    938 F.2d 575 (5th Cir. 1991) .............................................................15

*Williams Indus., Inc. v. Earth Dev. Sys. Corp.*,
    110 S.W.3d 131 (Tex. App.—Houston [1ˢᵗ Dist.] 2002, no pet.).................14, 15

**STATUTES**

TEX. LAB. CODE ANN. § 21.202 (Vernon Pamph. 1996) .........................................14

Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.001,
    *et seq*. ..............................................................................................1, 4

## STATEMENT OF CASE

This is an employment discrimination and retaliation lawsuit filed by Appellee, Dr. Adolfo Morales ("Dr. Morales") in the 444th District Court for Cameron County, Texas.[1] Dr. Morales seeks to recover damages from his former employer, Ophthalmic Consultants of Texas, P.A. ("Appellant" or "OCT") under the Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.001, *et seq*. for alleged age discrimination and retaliation. Specifically, Dr. Morales alleges that OCT terminated his employment after he opposed and/or complained about alleged discrimination in the workplace.[2]

During his employment as an ophthalmology specialist with OCT, Dr. Morales agreed to arbitrate any claims arising from his employment or the termination of his employment pursuant to an Agreement to Arbitrate ("Agreement"), which he signed on October 20, 2009.[3] Notably, in this stand-alone Agreement both OCT and Dr. Morales agreed to substitute arbitration for litigation, and waived the right to have disputes resolved in court.[4] Dr. Morales has presented no evidence to contest his signature on the Agreement.

---

[1] Court Record ("C.R.") at 4-9.
[2] *Id*.
[3] C.R. at 25-27.
[4] *Id.*

OCT moved the trial court to compel Dr. Morales to arbitrate his claims pursuant to the Agreement and stay its proceedings pending arbitration.[5] After a hearing on May 20, 2015, the trial court denied OCT's Motion to Compel Arbitration.[6] No discovery has been conducted by either party and other than seeking to compel arbitration, OCT has not sought any other relief from the District Court.[7]

OCT now seeks to overturn the trial court's ruling because Dr. Morales's challenge to the validity and enforceability of the Agreement is a dispute that should be decided by the arbitrator based on applicable United States Supreme Court and Texas Supreme Court decisions. Regardless of who determines the issue, Dr. Morales's dispute relates exclusively and entirely to his employment and/or the termination of his employment with OCT and, therefore, falls squarely within the scope of the valid, mutually-binding Agreement which Dr. Morales acknowledged and accepted as a matter of law. Finally, OCT has not waived its right to enforce the Agreement as it has not substantially invoked the judicial

---

[5] C.R. at 17-28.

[6] C.R. at 67. The court originally set OCT's motion to compel arbitration for hearing on November 19, 2014; however, OCT inadvertently did not receive notice of the hearing, and did not receive a copy of Dr. Morales's response to the motion to compel until it requested a copy directly from Dr. Morales's counsel. (Appendix Exhibit E, Reporter's Record ("R.R.") Hearing Transcript 5/20/15 at 7:1-8:1). The Court agreed to reschedule the hearing for May 20, 2015. (C.R. at 64.)

[7] Exhibit E, R.R. (Hearing Transcript 5/20/15) at 8:9-16.

process and there has been no prejudice to Dr. Morales. There is no evidence to support the trial court's denial of OCT's Motion to Compel Arbitration.

## ISSUES PRESENTED

1.      Whether the trial court erred when it denied OCT's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration of Dr. Morales's employment-related claims under the Agreement.

2.      Whether the trial court erred by ruling on Dr. Morales's defenses to the Agreement as a whole, when *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) and *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) mandate that challenges to agreements as a whole, such as Dr. Morales's argument that the Agreement is illusory, are to be determined by the arbitrator.

3.      Whether the trial court erred by ruling that the Agreement is illusory and unenforceable.

4.      Whether the trial court erred by ruling that OCT had waived its right to enforce the Agreement.

## STATEMENT OF FACTS

This lawsuit stems from Dr. Morales's employment as an ophthalmology specialist with OCT, and the non-renewal of his contract of employment with

OCT. Dr. Morales contends that OCT discriminated against him on the basis of his age and retaliated against him for opposing workplace discrimination, in violation of various provisions of the Texas Commission on Human Rights Act of 1983, TEX. LAB. CODE ANN. § 21.001 *et seq.*[8]

Dr. Morales was hired by OCT as an ophthalmology specialist in 2009.[9] In conjunction with his hire, OCT presented Dr. Morales with an Agreement to Arbitrate ("Agreement") which he executed on October 20, 2009.[10] This Agreement is a stand-alone Agreement which does not incorporate language from any other policy.[11] This Agreement does not contain any language which reserves OCT's right to modify the Agreement, thus the Agreement cannot be modified unilaterally by OCT in any way.[12]

By signing this Agreement, Dr. Morales agreed to the following language:

> I acknowledge and agree that I have carefully read this Arbitration Agreement, that I understand its terms, and that I have entered into this Arbitration Agreement voluntarily and without duress, pressure or coercion from any person and without relying on any promises or representations by the Company other than those contained in this Arbitration Agreement itself.[13]

---

[8] C.R. at 4-9.
[9] C.R. at 5, 18.
[10] C.R. at 25-27.
[11] *Id.*
[12] *Id.*
[13] C.R. at 27.

Dr. Morales's voluntary signature on the Agreement expressly and implicitly evidences his consent to arbitrate all disputes related to his employment, including, but not limited to, the following:

> wrongful discharge under statutory law and common law; employment discrimination based on federal, state or local statute, ordinance, or governmental regulations; retaliatory discharge; compensation disputes; tortuous conduct; contractual violations, ERISA violations; FLSA (wage and hour) violations; and other statutory and common law claims and disputes.[14]

In this proceeding, Dr. Morales seeks relief exclusively under the Texas Labor Code for alleged age discrimination in employment, and for retaliation, claiming that OCT terminated his employment after he complained of discrimination.[15]  Therefore, Dr. Morales's entire dispute is employment-related and falls squarely within the scope of the Agreement.  In fact, Dr. Morales's claims are of the exact type listed as an example of disputes explicitly covered by the Agreement.

## I.
## ARGUMENT AND AUTHORITIES

### A.    Summary of Argument

The trial court erred by not submitting Dr. Morales's defense concerning the enforceability of the Agreement as a whole to the arbitrator, as required under

---

[14]    C.R. at 27.
[15]    C.R. at 5-7.

*Buckeye Check Cashing Inc.*, 546 U.S. 440 (2006) and *In re. Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007). Alternatively, the trial court erred when it denied OCT's Motion to Compel Arbitration because a valid, mutually binding agreement to arbitrate all employment-related disputes exits between OCT and Dr. Morales that explicitly covers the subject matter of the present litigation. In conjunction with his hire, OCT presented Dr. Morales with an Agreement to Arbitrate which he executed on October 20, 2009.[16] Dr. Morales's voluntary signature on the Agreement expressly and implicitly evidences his consent to arbitrate all disputes relating to his employment. This Agreement does not contain any provision which allows OCT to unilaterally modify or change the Agreement in any way.[17] For this reason, the Agreement is not illusory as it cannot be modified. Finally, the trial court erred in finding that OCT waived its right to enforce the Agreement.

### B. Standard of Review

The "no evidence" standard of review applies to an interlocutory appeal from the denial of a motion to compel arbitration.[18] On appeal, a trial court's determination as to the validity and enforceability of an arbitration agreement is a

---

[16] C.R. at 27.
[17] C.R. at 25-27.
[18] *See Pepe Intern. Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1996, no writ).

legal question subject to *de novo* review.[19]  Notably, courts strongly favor the resolution of employment disputes through arbitration, rather than formal litigation,[20] and any "[d]oubts should be resolved in favor of arbitration."[21]

Under established precedent, when a dispute or defense addresses the entire agreement between the parties – such as Dr. Morales's argument that the Agreement is illusory and thus unconscionable – this defense is properly raised before an arbitrator during arbitration proceedings.[22]  Here, as a preliminary matter, the trial court, erred by not referring Dr. Morales's dispute concerning the validity and/or enforceability of the Agreement as a whole to arbitration.

Alternatively, to the extent the Court is the proper entity to determine arbitrability in this context, the Court must first decide: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in

---

[19]  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

[20]  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998); *In re Next Fin. Group, Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (per curiam); *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008); *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765-66 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.—San Antonio 2000, no writ); *Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, writ denied).

[21]  *AT&T Techs., Inc. v. Commc'ns Workers of Am. et al.*, 475 U.S. 643, 650 (1986) (emphasis added); *see also Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960), and *Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960).

[22]  *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("We reaffirm today that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *In re FirstMerit Bank*, 52 S.W.3d 749, 756 (Tex. 2001).

question falls within the scope of that arbitration agreement."[23] "*A court has no discretion and must compel arbitration if the answer to both questions is affirmative*."[24]

The trial court should have compelled arbitration and stayed its proceedings pending arbitration under the two-prong test because: (1) the Agreement mutually obligates both Dr. Morales and OCT to submit employment-related disputes between them to arbitration; and (2) the Agreement expressly covers all "legal or equitable claims arising out of or in connection with [his] employment, and all other claims between [Dr. Morales] and the company,"[25] such as those raised by Dr. Morales.

C. **The trial court erred by not submitting the dispute concerning enforceability of the Agreement to the Arbitrator.**

Even if the trial court's conclusion that the Agreement was unenforceable is correct, the trial court erred by not submitting this determination to the arbitrator, as mandated by applicable case law regarding defenses raised to agreements as a whole. "Whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the

---

[23] *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765-66 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999)).
[24] *See In re Tenet*, 84 S.W.3d at 755-766 (emphasis added); *In re. Oakwood Mobile Homes*, 987 S.W.2d at 573; *Henry*, 18. S.W.3d at 688.
[25] C.R. at 25.

parties clearly and unmistakably provide otherwise."[26] The defenses raised by Dr. Morales in his Response to OCT's Motion to Compel, and at the hearing on OCT's motion, namely that the Agreement is unconscionable and illusory, apply to the Agreement between the parties as a whole.[27] Morales's argument that the Agreement is illusory because it is silent with regard to how the Agreement can be modified or amended by OCT is a defense to the parties' agreement as a whole.[28] The United States and Texas Supreme Courts have made abundantly clear that when the defense raised addresses the entire agreement between the parties, such as here, that defense is properly brought before an arbitrator during the arbitration proceedings.[29] As such, the enforceability of the Agreement is a question for the arbitrator, and not the Court, to decide; and the dispute over enforceability should be compelled to arbitration. The trial court erred in not submitting Dr. Morales's dispute concerning the enforceability of the Agreement as a whole to the arbitrator.

---

[26] *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. at 649.

[27] C.R. at 35-41; Appendix Exhibit D, R.R. (Hearing Transcript 11/19/14) at 7:11-8:25.

[28] Exhibit D, R.R. (Hearing Transcript 11/19/14) at 7:11-8:25.

[29] *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("We reaffirm today that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *In re FirstMerit Bank*, 52 S.W.3d 749, 756 (Tex. 2001)); *In re Permian Tank & MFG, Inc.,* 306 S.W.3d 338, 340 (Tex. App.—Eastland 2010, no pet.)

**D.**    **The Agreement constitutes a valid agreement to arbitrate between the Parties.**

An employer attempting to enforce an arbitration agreement must show that the agreement meets all requisite contract elements – offer, acceptance, consideration, and mutuality of obligation.[30]  Arbitration should be compelled if the promises to arbitrate disputes are mutual and the parties seeking to compel arbitration have the right to compel arbitration against the other party.[31]  Here, all of these elements have been established.  Dr. Morales does not dispute that he was offered the Agreement, and voluntarily executed it on October 20, 2009 in acceptance of the offer.[32]  Rather, he claims only that as written the Agreement is illusory, but as set forth below this is not the case.

Under Texas law, a court should compel arbitration if the promises to arbitrate disputes are mutually-binding and non-illusory, and the parties seeking to compel arbitration have the right to compel arbitration against the other party.[33] "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a

---

[30]    *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003).
[31]    *Id.* at 288; *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002).
[32]    C.R. at 27; 32-46.
[33]    *See J.M. Davidson, Inc.*, 128 S.W.3d at 228; *In re Halliburton Co.*, 80 S.W.3d at 569-70.

contract."[34]    A party's inability to unilaterally modify the provisions of an arbitration provision indicates its intent to be mutually bound by its terms, which in turn constitutes adequate consideration between the parties for the agreement.[35]

Dr. Morales argued before the District Court that the Agreement is illusory because OCT allegedly has the right to modify, amend or change the Agreement in its sole and exclusive discretion.[36] This is not correct. In fact, Dr. Morales failed to cite any provision of the Agreement which supports this proposition in both his response to OCT's motion to compel arbitration or at the hearing on the motion.[37] Rather, Dr. Morales admits that the Agreement is silent as to the modification or alteration of the terms and conditions.[38] A promise is illusory only if it does not bind the promisor, such as when the promisor retains the option to discontinue performance.[39] There is no language in the Agreement whereby OCT reserved the

---

[34] *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010).

[35] *See e.g., Halliburton*, 80 S.W.3d at 570 (noting that an arbitration provision in an employment context was not illusory where the employer could not retroactively avoid its promise to arbitrate an existing dispute by unilateral modification).

[36] See Exhibit D, R.R. (Hearing Transcript 11/19/14) at 7:10-8:25; Exhibit E, (Hearing Transcript 5/20/15) at 13:1-15:2)

[37] *Id.*; C.R. 32-46.

[38] See Exhibit D, R.R. (Hearing Transcript 11/19/14) at 7:10-8:8)

[39] *In re 24R, Inc.*, 324 S.W.3d 564 (Tex. 2010); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009).

right to modify the Agreement, either prospectively or retroactively. Accordingly, the Agreement is not illusory or unenforceable.[40]

Both OCT and Dr. Morales are mutually bound by the Agreement's non-illusory terms, and they both have the right to enforce it against the other.[41] Indeed, the Agreement specifically provides that OCT is bound by the terms of the Agreement to Arbitrate.[42] Accordingly, the Agreement is not illusory, is supported by adequate consideration, and constitutes an enforceable, binding agreement to arbitrate between OCT and Dr. Morales. A signed, written agreement to arbitrate may be revoked by a party only on any ground that exists at law or in equity for the revocation of a contract.[43] Dr. Morales identifies so such ground for revocation and thus the Agreement must be enforced.

### E. Dr. Morales's claims fall within the Agreement's scope.

Federal and state law strongly favor arbitration, and any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.[44] Here, the

---

[40] *In re 24R, Inc.*, 324 S.W.3d at 564 (The company did not retain any right within the arbitration agreement to modify or abolish its terms.)

[41] *See* C.R. at 25-27.

[42] *See* C.R. at 26 ("Both [Dr. Morales] and [OCT] understand that, by agreeing to arbitration, [Dr. Morales and OCT] are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (litigation), and thereby are waiving the right to have disputes resolved in court.")

[43] *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56-61 (Tex. 2008).

[44] *See, e.g.*, *In re Hornbeck Offshore Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (stating "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration").

Agreement lists several examples of the types of disputes which, if they arose, would fall within the Agreement's scope, including claims for wrongful discharge, employment discrimination and retaliatory discharge.[45] Accordingly, this Court should give effect to the Agreement's specific scope by ordering the trial court to compel arbitration of Dr. Morales's claims, all of which fall within the scope of the Agreement.

### F.    OCT Has Not Waived Its Right to Compel Arbitration.

Dr. Morales's additional argument, that OCT waived its right to compel arbitration is also without basis.[46] Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.[47] There is a strong presumption against waiver of arbitration rights, and waiver is disfavored.[48] It must be intentional.[49] Any doubts are resolved in favor of

---

[45]  *See* C.R. at 25 ("The Agreement states: "Both I and the Company, …, agree that, …, any legal or equitable claims arising out of or in connection with my employment, the terms and conditions of my employment, or the termination of my employment, and all other claims between me and the Company, even if not related to my employment, will be settled by binding arbitration.")

[46]  Exhibit D, R.R. (Hearing Transcript 11/19/14) at 8:21-11:4; Exhibit E, (Hearing Transcript 5/20/15) at 15:3-16:13); Indeed, in support, Dr. Morales relies only upon a single case, *Interconex, Inc. v. Ugarov*, S.W.3d 2006 WL 2506562 (Tex. App.—Houston [1st Dist.] 2006, n.p.h.). However, the Texas Court of Appeals has vacated the 2006 ruling on which Morales relied in both his response to OCT's motion to compel arbitration and during the hearing on the motion. See *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523 (Tex. App.—Houston [1st Dist.] 2007).

[47]  *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).

[48]  *First Community Insurance Company and Boyd Construction v. F-Con Contractors, Inc.*, 2000 Tex. App. Lexis 1655 (Tex. App.—Dallas March 14, 2000); *EZ Pawn Corporation v. Mancias*, 934 S.W.2d 87, 89-90 (Tex. 1996); *Interconex*, 224 S.W.3d at 533.

arbitration.  The party claiming waiver has a heavy burden to prove the opposing party substantially invoked the judicial process to the other's detriment or prejudice.[50]  Waiver will be found only when (1) the party seeking arbitration has substantially invoked the judicial process,[51] and (2) the party opposing arbitration suffers actual prejudice as a result.[52]  Here, OCT has not substantially invoked the judicial process and Dr. Morales has not suffered any prejudice.[53]

### 1.    OCT Has Not Substantially Invoked the Judicial Process

OCT has not taken any position inconsistent with its Agreement, such that it intentionally waived its ability to enforce this Agreement.[54]  Substantially invoking the judicial process involves "taking specific and deliberate actions, after the suit's

---

[49]  *EZ Pawn Corp.*, 934 S.W.2d at 89 ("Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right.")

[50]  *First Community Insurance Company and Boyd Construction v. F-Con Contractors, Inc.*, 2000 Tex. App. Lexis 1655 * 4-5.

[51]  To invoke a trial court's subject matter jurisdiction to adjudicate a claim under the Texas Commission on Human Rights Act, the complaining party must first file a charge of discrimination to the Texas Commission on Human Rights. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991). If the claim is not presented to the commission, the litigant does not have the right to have the claim adjudicated in a judicial court.  Only after this is done could Dr. Morales have participated in the judicial process, and OCT been able to move to compel arbitration.

[52]  *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see Schroeder*, 813 S.W.2d at 488. A party must file a complaint with the commission within 180 days after the date the alleged unlawful employment practice occurred; the commission shall dismiss untimely complaints. TEX. LAB. CODE ANN. § 21.202 (Vernon Pamph. 1996).

[53]  *Id.*

[54]  Exhibit E, (R.R. (Hearing Transcript 5/20/15) at 17:8-18:3)

filing, that are inconsistent with the right to arbitrate."[55] The Court has found that participation in a docket control conference, sending interrogatories and requests for production, noticing an oral deposition, and agreeing to re-set a trial date were insufficient to prove prejudice.[56] Engaging in written discovery, filing motions for protective orders, amending scheduling orders, filing a motion to transfer venue, conducting depositions and attending pre-trial conference hearings prior to filing a motion to compel arbitration were also insufficient.[57] Furthermore, generalized protestations about the costs of delay are not enough to overcome the strong presumption in favor of arbitration.[58]

During the pendency of this case, other than its motion to compel arbitration, OCT filed only an Answer subject to arbitration.[59] OCT's Answer included an affirmative defense that a valid, enforceable, and binding arbitration provision

---

[55] *Williams Indus.*, 110 S.W.3d at 135 (citing *Sedillo v. Campbell*, 5 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

[56] *EZ Pawn Corporation*, 934 S.W.2d at 90; see also *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (holding no waiver even though parties engaged in discovery, attended pretrial conference, amended scheduling order three times and moved to transfer case during thirteen-month period before filing motion to compel arbitration).

[57] *Id.*; *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (discussing potential trial setting and sending discovery one day before moving to compel arbitration did not waive arbitration.)

[58] *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 499 (Tex. App.—San Antonio [4th Dist.] 2000).

[59] C.R. at 13; OCT's Answer states as its second defense, "A valid, enforceable, and binding arbitration provision governs all Plaintiff's allegations and causes of action, so arbitration of this matter should be compelled and all proceedings in this Court should be stayed pending final and binding arbitration."; *See In re Serv. Corp. Int'l,* 85 S.W.3d 171, 175 (Tex. 2002) (Motions to dismiss and to stay discovery were sought to avoid litigation and not to participate in it, thus no waiver occurred.)

governed Dr. Morales's allegations, and that arbitration should be compelled; therefore, OCT's right and intent to arbitrate were clear since its appearance on October 13, 2014.[60] Emails from OCT on October 13, 2014, and on October 28, 2014, further reminded Dr. Morales that OCT intended to arbitrate this matter.[61] Finally, on October 28, 2014, only 15 days after filing its Answer, OCT filed its Motion to Compel Arbitration.[62] During the hearing, counsel for Dr. Morales even admitted that it was OCT's position that all proceedings and discovery were stayed until there was a decision made by the Court with regard to OCT's motion to compel arbitration.[63] Accordingly, Dr. Morales has not shown any intent by OCT during this lawsuit to waive its ability to invoke the arbitration process.

## 2. Dr. Morales Cannot Show Prejudice

To prevail on a waiver defense, a party must prove that it has suffered prejudice, and general allegations of harm will not suffice.[64] Prejudice is defined in terms of delay, expense, or damage to a party's legal position when it is forced to litigate issues which will later be arbitrated.[65] A delay in making a demand for

---

[60] *Id.*; Exhibit E, R.R. (Hearing Transcript 5/20/15) at 18:4-18.
[61] C.R. at 28.
[62] C.R. at 17-28.
[63] Exhibit E, R.R. (Hearing Transcript 5/20/15) at 8:9-19.
[64] *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494 (Tex. App.—San Antonio 2000); *See In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex. 1999).
[65] *Id.; EZ Pawn Corp. v. Mancias*, 934 S.W.2d at 91.

arbitration does not constitute waiver in the absence of actual prejudice.[66]

Prejudice occurs when a party engages in discovery not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.[67] As stated above, none of these things have occurred in this case.[68] Moreover, Dr. Morales failed to provide any evidence of prejudice in his Response, or at the hearings on the motion to compel arbitration.[69] Indeed, Dr. Morales presented no evidence that he was prejudiced by any action or delay by OCT. He did not identify any discovery obtained by OCT through the judicial process that OCT would not have been entitled to in arbitration. Furthermore, Dr. Morales made no attempt to establish the time and expenses incurred in litigating his claim that

---

[66] *EZ Pawn Corp.*, 934 S.W.2d at 91; see also *Home Club, Inc. v. Barlow*, 818 S.W.2d 192, 193 (Tex. App.—San Antonio 1991, orig. proceeding) (no waiver of right to arbitrate dispute despite delay of almost 13 months from time suit was filed until motion for stay was filed.)

[67] *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 573.

[68] Both Parties will have an opportunity to conduct written and oral discovery pursuant to the rules and procedures agreed to by the Parties and pursuant to the American Arbitration Association.

[69] C.R. at 44-45; Exhibit D, R.R. (Hearing Transcript 11/19/14) at 8:19-11:4; Exhibit E, (Hearing Transcript 5/20/15) at 15:3-16:13.

would not have been expended in arbitration.[70] Without evidence of prejudice, Dr. Morales's waiver argument fails.[71]

## II.
## CONCLUSION

The trial court erred by ruling on the enforceability of the Agreement when such determination should have been made by the arbitrator under the law. Alternatively, to the extent the trial court was the proper entity to adjudicate the enforceability of the Agreement, it had no choice but to compel arbitration of Dr. Morales's claims. OCT presented evidence that Dr. Morales voluntarily acknowledged and accepted OCT's Agreement to Arbitrate. Additionally, OCT established that the Agreement clearly and unambiguously includes Dr. Morales's claims, all of which are brought under the Texas Labor Code. Dr. Morales presented no evidence to rebut these facts. This Court should, therefore, remand this case with instructions to the trial court to refer the dispute concerning the

---

[70] *Granite Constr. Co. v. Beaty*, 130 S.W.3d 362 (Tex. App.—Beaumont 2004); *See Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 499-500 (Tex. App.—San Antonio 2000, orig. proceeding).

[71] *In re Multifuels, L.P.*, 2010 Tex. App. LEXIS 3576 (Tex. App.—Houston [1st Dist.] May 7, 2010); *In re Delta Homes, Inc.*, 5 S.W.3d 237, 240 (Tex. App.—Tyler 1999, orig. proceeding) ("Here, . . . [the opponents] . . . have set forth no evidence showing that they were actually prejudiced as a result of the delay. Thus, they have failed to establish Delta's waiver of the right to arbitrate."); *United Parcel Serv., Inc. v. McFall*, 940 S.W.2d 716, 720 (Tex. App.—Amarillo 1997, orig. proceeding) ("[The opponent] may have explained the extent of the delay, but he did not illustrate, by argument or evidence, how it prejudiced him. Thus, he did not carry the burden imposed by *EZ Pawn* or *Prudential*.").

Agreement's enforceability to arbitration or, alternatively, compel Dr. Morales to arbitrate his claims under the Agreement.

## III.
## PRAYER FOR RELIEF

Appellant Ophthalmic Consultants of Texas, P.A., respectfully requests that this Court overrule the decision of the trial court and order Dr. Morales to arbitrate his dispute over the enforceability of the Agreement or order Dr. Morales's claims to arbitration, and for such other relief, both at law and in equity, to which Appellant OCT may be justly entitled.

Respectfully submitted,

*/s/ Victor N. Corpuz*
Victor N. Corpuz, Esq.
corpuzv@jacksonlewis.com
Texas Bar No. 04838450
Allyson L. Johnson, Esq.
johnsona@jacksonlewis.com
Texas Bar No. 24054005

**JACKSON LEWIS P.C.**
500 N. Akard, Suite 2500
Dallas, Texas 75201
Phone:    (214) 520-2400
Fax:       (214) 520-2008

**LEAD ATTORNEYS FOR APPELLANT**

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief (including footnotes) contains 4,158 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

 */s/ Victor N. Corpuz*
ONE OF COUNSEL

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the corrected foregoing document has been sent by electronic mail, and certified mail, return receipt requested, on the following counsel of record on this 20th day of July, 2015:

Larry Warner
Larrywarner1945@gmail.com
3109 Banyan Circle
Harlingen, TX 78550
CMRR:  7013 2630 0002 1217 9695

John Shergold
hodgeshergold@aol.com
**HODGE & SHERGOLD, LLP**
1534 East 6th Street, Suite 103
Brownsville, Texas  78520
CMRR: 7013 2630 0002 1217 9688

               */s/ Victor N. Corpuz*
               ONE OF COUNSEL

**NO. 13-15-00278-CV**

_____

IN THE
THIRTEENTH COURT OF APPEALS
EL PASO, TEXAS
13TH JUDICIAL DISTRICT

_____

**ADOLFO MORALES**
**v.**
**OPHTHALMIC CONSULTANTS OF TEXAS, P.A.**

_____

On Appeal from the
444th District Court of Cameron County, Texas

_____

# APPENDIX IN SUPPORT OF INTERLOCUTORY APPEAL

_____

**JACKSON LEWIS P.C.**

Victor N. Corpuz, Esq.
corpuzv@jacksonlewis.com
Texas Bar No. 04838450
Allyson L. Johnson, Esq.
johnsona@jacksonlewis.com
Texas Bar No. 24054005

500 N. Akard, Suite 2500
Dallas, Texas 75201
Phone: (214) 520-2400
Fax:    (214) 520-2008

**LEAD ATTORNEYS FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

_____

Pursuant to Rule 38.1 of the Texas Rules of Appellate Procedure, Appellant

Ophthalmic Consultants of Texas, P.A., files the following Appendix in support of

its Interlocutory Appeal on file:

**APPENDIX OF EVIDENCE IN SUPPORT OF
INTERLOCUTORY APPEAL**

| TAB | DESCRIPTION |
|---|---|
| A | June 1, 2015 Order Denying Defendant's Motion to Compel Arbitration |
| B | Ophthalmic Consultants of Texas Agreement to Arbitrate signed by Dr. Morales (October 20, 2009) |
| C | Excerpts from the Master Indexes to Reporter's Record (Volume 1) |
| D | Excerpts from the Certified Court Reporter's Record/Hearing Transcript from November 19, 2014 (Volume 2) |
| E | Excerpts from the Certified Court Reporter's Record/Hearing Transcript from May 20, 2015 (Volume 3) |

RECEIVED
2014-DCL-05833
11/17/2014 2:30:59 PM
Aurora De La Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
3201011

CAUSE NO.: 2014-DCL-05833-H

| | | |
|---|---|---|
| **ADOLFO MORALES** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **444th JUDICIAL DISTRICT** |
| | § | |
| **OPHTHALMIC CONSULTANTS OF** | § | |
| **TEXAS, P.A.** | § | |
| *Defendant* | § | **CAMERON COUNTY, TEXAS** |

## ORDER DENING DEFENDANT'S MOTION TO COMPEL ARBITRATION

On this day, came on to be heard, Defendant's Motion to Compel Arbitration and

Motion to Stay. Having reviewed Defendant's Motion and Plaintiff's Response the Court

issues the following ruling. It is ordered adjudged and decreed that Defendant's Motion

to Compel Arbitration is hereby **DENIED**.

All other and further relief is not specifically granted herein is hereby **DENIED**..

SIGNED this the ___1___ day of ___June___. 2015

_____
PRESIDING JUDGE

FILED 10:30 o'clock ___A___ M
**ERIC GARZA** - DISTRICT CLERK

JUN - 2 2015

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ Deputy #19

6/2/15
C:    Honorable John Shergold; VIA EMAIL: hodgeshergold@aol.com
      Honorable Victor N. Corpuz; VIA EMAIL: corpuzv@jacksonlewis.com



**EXHIBIT**

A
_____

PDF created with pdfFactory trial version www.pdffactory.com

FILED
2014-DCL-05833
10/28/2014 3:51:25 PM
Aurora De La Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
2984536

**OPHTHALMIC CONSULTANTS OF TEXAS**

**AGREEMENT TO ARBITRATE**

A.  Purpose of Agreement to Arbitrate

I acknowledge that Ophthalmic Consultants of Texas ("the Company") seeks to work with its employees to resolve differences as soon as possible after they arise. Often times, differences can be eliminated through internal discussions between an employee and his/her supervisor. Other times, it may be helpful for human resources or other Company employees to become involved to help solve a dispute. If this fails to resolve the dispute, the Company believes it is economical and beneficial to all involved parties to engage in nonbinding mediation and, if that fails, then to finally resolve the dispute by use of a third-party neutral arbitrator in binding arbitration. Through this Agreement to Arbitrate, both I and the Company agree to an alternative dispute resolution program that includes nonbinding mediation as a first means to resolve a dispute subject to this agreement and, in the event such measures fail, participation in a binding arbitration according to the terms set forth below.

B.  Agreement Regarding Claims to be Arbitrated

Both I and the Company, its parent corporation, affiliates, subsidiaries, divisions and successors, assigns, and the current and former employees, officers, directors and agents, agree that, other than claims for workers' compensation benefits or claims arising under a non-compete agreement, any legal or equitable claims arising out of or in connection with my employment, the terms and conditions of my employment, or the termination of my employment, and all other claims between me and the Company, even if not related to my employment, will be settled by binding arbitration. This agreement applies to the following allegations, disputes, and claims for relief, but is not limited to those listed: wrongful discharge under statutory law and common law; employment discrimination based on federal, state, or local statute, ordinance, or governmental regulations; retaliatory discharge; compensation disputes; tortuous conduct; contractual violations, ERISA violations; FLSA (wage and hour) violations; and other statutory and common law claims and disputes. This provision shall apply to any such disputes or controversies involving me and the Company and/or its shareholders, directors, officers, managers, supervisors and other employees.

C.  Procedural Matters Related to Arbitration

Step 1: Non-Binding Mediation

Before resorting to arbitration, both I and the Company agree to mediate as a first means to resolve any disputes subject to this agreement. Specifically, both I and the Company agree to submit any such claim to non-binding mediation before an impartial, mutually agreed-upon mediator.

**EXHIBIT**

B

Step 2:  Binding Arbitration

If non-binding mediation does not resolve the claim to the satisfaction of the parties, the next and final step is to arbitrate the matter before the American Arbitration Association ("AAA").  The arbitration proceedings shall be conducted in the city in which my employment is based (unless I and the Company agree to another location) in accordance with the Employment Dispute Resolution Rules ("EDR Rules") of the AAA in effect at the time a demand for arbitration is made.  If I so choose, I understand that I am entitled to representation by an attorney throughout the proceedings at my own expense.  The Company is likewise entitled to representation throughout the proceedings at its own expense.

One arbitrator shall be used and shall be chosen by mutual agreement of the parties.  If, within thirty days after either party notifies the other party of an arbitrable dispute, no arbitrator has been chosen, an arbitrator shall be chosen by AAA pursuant to its EDR Rules.  The arbitrator must be an attorney licensed to practice law in the jurisdiction in which the arbitration is to be conducted.  The arbitrator shall be required to determine the rights of the parties in accordance with federal law and the state law of the forum with the most substantial relationship to the conduct at issue.  The arbitrator shall have the authority to consider and grant a motion to dismiss and motion for summary judgment applying the standards governing such motions under the Federal Rules of Civil Procedure.  The arbitrator shall coordinate, and limit as appropriate, all pre-trial arbitral discovery, which shall include document production, information requests, and depositions.  The arbitrator shall issue a written decision and award, which shall explain the basis of the decision.  The decision and award shall be exclusive, final, and binding on both me and the Company, and all heirs, executors, administrators, successors, and assigns.  The costs and expenses of the arbitration shall be borne by the Company, except that if I initiate the arbitration, I will pay up to $100 towards the administrative fees charged by AAA, except that this requirement will be waived upon a showing of financial hardship under the same standards used in federal district court.  **Both I and the Company understand that, by agreeing to arbitration, we are agreeing to substitute one legitimate dispute resolution forum (arbitration) for another (litigation), and thereby are waiving the right to have disputes resolved in court.  This substitution involves no surrender, by me or the Company, of any statutory or common law benefit, protection, or defense.**

D.  Interstate Commerce and the Federal Arbitration Act

I understand and agree that the Company is involved in transactions involving interstate commerce and that my employment with the Company and participation in the Plan involve such commerce.  The Federal Arbitration Act, Title 9 of the United States Code, will govern the interpretation, enforcement, and all judicial proceedings under and/or with respect to the this Arbitration Agreement.

E.  At-Will Employment

Both I and the Company agree that this is not intended to add to, create, or imply any contractual or other right of employment.  This is not a contract of

employment, but merely an agreement to arbitrate. This Agreement to Arbitrate replaces and supersedes any prior agreement to arbitrate disputes between me and the Company.

F.   Knowing and Voluntary Agreement

**I acknowledge and agree that I have carefully read this Arbitration Agreement, that I understand its terms, and that I have entered into this Arbitration Agreement voluntarily and without duress, pressure or coercion from any person and without relying on any promises or representations by the Company other than those contained in this Arbitration Agreement itself.**

_____
Employee's Signature

ADOLFO P MORALES M
_____
Employee's Printed Name

10/20/09
_____
Date

_____
[Name and title of rep signing]
Ophthalmic Consultants of Texas

_____
Date

REPORTER'S RECORD

VOLUME 1 OF 3

TRIAL COURT CAUSE NO. 2014-DCL-05833-H

APPELLATE CAUSE NO. 13-15-00278-CV

- - - - - - - - - - - - - - - x
                               :
ADOLFO MORALES,                : IN THE DISTRICT COURT
        Plaintiff              :
                               :
VS.                            : 444TH JUDICIAL DISTRICT
                               :
OPHTHALMIC CONSULTANTS OF      :
TEXAS, P.A.,                   :
        Defendant              : CAMERON COUNTY, TEXAS
                               :
- - - - - - - - - - - - - - - x


**************************************************

MASTER INDEXES TO REPORTER'S RECORD

**************************************************

EXHIBIT

C

**VOLUME 1**
**MASTER INDEXES TO REPORTER'S RECORD**

**VOLUME 2**
**HEARING ON DEFENDANT'S MOTION TO ENFORCE ARBITRATION**

NOVEMBER 19, 2014                                        PAGE   VOL

Argument by Mr. Shergold ....................     7      2

Court's Ruling taken under Advisement .......    11      2

Adjournment .................................    11      2

Court Reporter's Certificate ................    12      2

**VOLUME 3 INDEX**
**HEARING ON DEFENDANT'S MOTION TO ENFORCE ARBITRATION**

MAY 20, 2015                                             PAGE   VOL

Discussion of Counsel Regarding Status of Case    6      3

Argument by Mr. Corpuz.......................    10      3

Argument by Mr. Shergold ....................    13      3

Court's Ruling taken under Advisement .......    17      3

Adjournment .................................    19      3

Court Reporter's Certificate ................    20      3

CORINNA N. GARCIA, CSR

**REPORTER'S RECORD**

**VOLUME 2 OF 3**

**TRIAL COURT CAUSE NO. 2014-DCL-05833-H**

**APPELLATE CAUSE NO. 13-15-00278-CV**

- - - - - - - - - - - - - - - x
                                :
ADOLFO MORALES,                 : IN THE DISTRICT COURT
          Plaintiff             :
                                :
VS.                             : 444TH JUDICIAL DISTRICT
                                :
OPHTHALMIC CONSULTANTS OF       :
TEXAS, P.A.,                    :
          Defendant             : CAMERON COUNTY, TEXAS
                                :
- - - - - - - - - - - - - - - x


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**HEARING ON
DEFENDANT'S MOTION TO ENFORCE ARBITRATION**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***


On NOVEMBER 19, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable DAVID A. SANCHEZ, Judge Presiding, held in Brownsville, Cameron County, Texas.

Proceedings reported by computerized stenotype machine.

EXHIBIT

D

**A P P E A R A N C E S**

APPEARING FOR THE PLAINTIFF:

JOHN L. SHERGOLD
State Bar No. 00794624
HODGE & SHERGOLD, L.L.P.
1534 E. 6th Street, Suite 103
Brownsville, Texas  78520
(956) 548-9100

**VOLUME 2 INDEX**
**HEARING ON DEFENDANT'S MOTION TO ENFORCE ARBITRATION**
**NOVEMBER 19, 2014**                                     **PAGE   VOL**

Argument by Mr. Shergold ....................   7     2

Court's Ruling taken under Advisement .......  11     2

Adjournment ................................  11     2

Court Reporter's Certificate ................  12     2

**INDEX OF EXHIBITS**

(NO EXHIBITS MARKED)

**P R O C E E D I N G S**

**(Open court, 9:15 a.m.)**

THE COURT: Mr. Shergold, what are you here on?

MR. SHERGOLD: Your Honor, I represent Dr. Adolfo Morales in Cause Number 2014-DCL-05833, and I believe I'm here -- I filed a document responding to Defendant's Motion to Enforce Arbitration and I'm ready to argue my case against enforcement of the arbitration provision.

THE COURT: Who is on the other side?

MR. SHERGOLD: A gentleman by the name of Victor Corpuz.

THE COURT: But he's not here today?

THE ADMINISTRATOR: Judge, Mr. David Oliveira checked in. I believe he may have checked in on this case.

THE COURT: Do you know if he's --

MR. SHERGOLD: I was in a jury trial last week and David Oliveira was representing the school district at that time, but I don't have any information as to whether he's representing Defendant Ophthalmic Consultants of Texas. But, Judge, I'll stand ready. I'll go get a cup of coffee or something.

THE COURT: I'm assuming it's their motion,

right?

MR. SHERGOLD: It's their motion and I filed a response, if the Court could check its file. I have a file-stamped copy of the response I filed Monday. I don't know if the Court has it or not.

THE COURT: I haven't looked at the file yet, but, I mean, if they don't show up, you know.

MR. SHERGOLD: I understand. We would ask that their motion be denied, Your Honor. At this time we ask that the defendant's motion be denied.

THE COURT: Well, let's just wait to see if that's the case Mr. Oliveira checked in on. I believe there is a little bit of uncertainly as to whether that's the case he checked in on or not.

MR. SHERGOLD: Sure. I understand. I'll go get a cup of coffee and hang out for 15 to 20 minutes.

THE COURT: We'll page you.

(Recess from 9:16 a.m. to 9:36 a.m.)

(David Oliveira present)

MR. SHERGOLD: May I approach, Your Honor?

THE COURT: Yes.

MR. SHERGOLD: Your Honor, I approached Mr. Oliveira and he -- we were in trial against each other last week and --

MR. OLIVEIRA: And he beat me. For the record, he beat me.

THE COURT: He's a very fine attorney.

MR. SHERGOLD: I'll lose the next one to David, but he's not on the case of Ophthalmic Consultants. I asked him upstairs.

MR. OLIVEIRA: Does my name show up somewhere?

THE COURT: No. Priscilla just wasn't sure. She just --

MR. OLIVEIRA: Because I was here on the other case, yes. Okay. No, I'm not on that case.

THE COURT: Okay. Have a good day. Okay. So --

MR. SHERGOLD: I'm here appearing as ordered by the Court, Your Honor. It's 9:35 and I have -- John Shergold, for the record. I represent Dr. Adolfo Morales, plaintiff in a wrongful termination suit where we have alleged that he was terminated due to discrimination. I believe the defendant has filed a motion to enforce arbitration. And, obviously, plaintiff is opposed.

We filed a response in opposition and I'm here as ordered, Judge, to argue against the motion to enforce as filed by the defendant.

THE COURT: All right. Go ahead and give me your argument.

MR. SHERGOLD: Your Honor, we're -- the plaintiff is --

THE COURT: And excuse me for interrupting. I'm sorry. But, Priscilla, the defendants didn't call or check in on this, did they?

THE ADMINISTRATOR: They did not call or check in.

THE COURT: Okay. All right. Go ahead.

MR. SHERGOLD: Very well, Your Honor. Several -- there's been several treatises written on enforceability of arbitration provisions. The plaintiff has filed a response and we have summarized our position as to why arbitration in this matter is not appropriate. One of the main arguments that we have here, Your Honor, is that it's an illusory -- the contract to arbitrate is illusory.

Dr. Morales was terminated by Ophthalmic Consultants of Texas. And after his termination, then the defendant decided to enforce the arbitration provision.

We believe that since Dr. Morales is no longer an employee of the employer -- and if you would look at the -- we'd ask that you take judicial notice of

the exhibit A that was filed by the defendant's representatives, which is the actual proposed arbitration agreement. You'll see in that arbitration agreement no provision as to what the situation is where the employee or ex-employee files or is gaining access to the Court system. In other words, the arbitration agreement is silent as to how do you modify, amend, change the agreement.

Now, when you're not working for a company any longer, there ought to be some sort of provision in the proposed agreement that says that in the event that this could be amended, modified or changed, it should -- some sort of notice should go to the ex-employee.

In other words, it doesn't give the plaintiff in my case the opportunity to be notified or have any sort of say on how or when or if this agreement that is being enforced could be modified sometime in the future, thus rendering this illusory.

Your Honor, I wrote quite a lengthy paper on this and I'd ask that basically that you read through that as well. Also waiver -- this is a very interesting concept -- does the fact that the time that's gone by from the point in which something occurred that plaintiff did in ordered to tip off the defendant that there was going to be some sort of litigation.

Well, back in December 2013 my client filed a complaint with the Texas Work Force Commission's Division of Civil Rights. At that point that was -- notice of that -- notification was sent to the defendant. There was no trigger by the defendant at that time as to whether or not they wanted to initiate the arbitration provision. Going forward, client filed -- got a right to sue letter in June of 2014.

Again, defendant did not trigger its arbitration agreement. Then we filed the lawsuit, if you'll notice, in August of 2014 and there is still not a trigger to the arbitration agreement. And then we march it down to 18 November, 2014 and we don't have -- we have this hearing.

And so what I'm saying is that if you look at the -- the whole file and look at the chronology of the dates, we have right to sue letter issued in June, lawsuit filed in August, answer filed by defendant. But when the defendant filed his answer, it stated that it had an arbitration agreement in its answer but it didn't say that it was -- it did not say or not filed at that time contemporaneously that it was planning to enforce the arbitration agreement. That motion was filed subsequent to the answer.

So another argument we have here is waiver,

that -- the provision that we always know is that if you're going to contest jurisdiction, it should be done at the time that you file an answer, contemporaneously. The answer was that there was an arbitration agreement but it did not state that the defendant was to file or to oppose or to force plaintiff into this arbitration agreement at that time.

So, in sum, Your Honor, we believe it's illusory. We believe that there has been a waiver here. Also, we believe there is -- substantial due process has been violated, which basically the Haliburton Court goes to the illusory aspect. Also, it discusses the issue regarding the enforceability of a substantial due process problem.

And also, finally, the waiver we indicated a case that -- regarding the timeline that the arbitration clause was not triggered. And I cited that -- if I could just have one second to cite that case, Your Honor. And that case was *Interconex Incorporated versus Ugarov,* SW3d Reporter 2006, Westlaw 2506562, and that's where the appellate court in Houston talked about the time lapse as to how that would give rise to a waiver.

Your Honor, for all the reasons given that I've stated, I would ask that the defendant's motion to

enforce arbitration be denied.  I represent plaintiff, of course, and we have included an order attached to my response that we ask that you sign to deny defendant's motion.  Thank you.

THE COURT:  All right.  Thank you, Mr. Shergold.  I'll review your brief and then I'll make a ruling.

MR. SHERGOLD:  Thank you, Your Honor.  May I be excused, Judge?

THE COURT:  Yes, sir.  Have a nice day.

MR. SHERGOLD:  And, Your Honor, just for the record, I'd just like to make note that the defendant's counsel is not present.  Is that correct?

THE COURT:  That's correct, didn't call or check in with us, so thereby waiving any oral arguments he may have wanted to make.

MR. SHERGOLD:  Thank you, Your Honor.  Have a nice day.

(The hearing was concluded at 9:44 a.m.)

THE STATE OF TEXAS:

COUNTY OF CAMERON:

### CERTIFICATE OF COURT REPORTER

I, CORINNA N. GARCIA, Official Court Reporter in and for the 444th District Court of Cameron County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of Reporter's Record, in the above styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

WITNESS MY OFFICIAL HAND on this the 2nd day of July, 2015.

/S/ Corinna N. Garcia
CORINNA N. GARCIA, CSR
Official Court Reporter
444th Judicial District Court
974 East Harrison Street
Brownsville, Texas 78520
Certificate No. 5210
Expiration Date 12/31/15

**REPORTER'S RECORD**

**VOLUME 3 OF 3**

**TRIAL COURT CAUSE NO. 2014-DCL-05833-H**

**APPELLATE CAUSE NO. 13-15-00278-CV**

- - - - - - - - - - - - - - - - x
                                 :
ADOLFO MORALES,                  : IN THE DISTRICT COURT
        Plaintiff                :
                                 :
VS.                              : 444TH JUDICIAL DISTRICT
                                 :
OPHTHALMIC CONSULTANTS OF        :
TEXAS, P.A.,                     :
        Defendant                : CAMERON COUNTY, TEXAS
                                 :
- - - - - - - - - - - - - - - - x


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**HEARING ON
DEFENDANT'S MOTION TO ENFORCE ARBITRATION**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***


          On MAY 20, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable DAVID A. SANCHEZ, Judge Presiding, held in Brownsville, Cameron County, Texas.

          Proceedings reported by computerized stenotype machine.

CORINNA N. GARCIA, CSR

EXHIBIT
E

**A P P E A R A N C E S**

APPEARING FOR THE PLAINTIFF:

    JOHN L. SHERGOLD
    State Bar No. 00794624
    HODGE & SHERGOLD, L.L.P.
    1534 E. 6th Street, Suite 103
    Brownsville, Texas  78520
    (956) 548-9100

APPEARING FOR DEFENDANT:

    VICTOR NAVASCA CORPUZ
    State Bar No. 04838450
    JACKSON LEWIS, P.C.
    500 North Akard, Suite 2500
    Dallas, Texas  75201
    (214) 520-2400

    EDUARDO G. "EDDIE" GARZA
    State Bar No. 00796609
    ESPARZA & GARZA, L.L.P.
    964 E. Los Ebanos Boulevard
    Brownsville, Texas  78520
    (956) 547-7775

**VOLUME 3 INDEX**
**HEARING ON DEFENDANT'S MOTION TO ENFORCE ARBITRATION**
MAY 20, 2015                                                    PAGE   VOL

Discussion of Counsel Regarding Status of Case    6      3

Argument by Mr. Corpuz........................   10      3

Argument by Mr. Shergold ....................   13      3

Court's Ruling taken under Advisement ........   17      3

Adjournment ..................................   19      3

Court Reporter's Certificate ................   20      3

## INDEX OF EXHIBITS

(NO EXHIBITS MARKED)

**P R O C E E D I N G S**

**(Open court, 9:27 a.m.)**

THE COURT: 2014-DCL-5833, Adolfo Morales versus Ophthalmic Consultants of Texas.

MR. CORPUZ: Victor Corpuz and Eddie Garza on behalf of Defendant Ophthalmic Consultants of Texas, Your Honor.

MR. GARZA: Good morning, Your Honor.

THE COURT: Good morning.

THE ADMINISTRATOR: Judge, Mr. Shergold did check in and he said he would be here at about 10:30. They said it wouldn't take maybe more than 10 minutes because one of the attorneys has a flight.

MR. CORPUZ: 10 to 15 minutes, Your Honor.

THE COURT: Okay. Where is Mr. Shergold?

MR. GARZA: At an administrative hearing at BISD. He came in this morning.

THE COURT: Okay. All right. Well, as soon as he comes in, we'll stop whatever we're doing so that we can take yours up so you can catch your flight. All right?

MR. CORPUZ: Very good.

MR. GARZA: Thank you, Your Honor.

(Recess from 9:27 a.m. to 10:34 a.m.)

THE COURT: Okay. Mr. Shergold,

2014-DCL-5833, Adolfo Morales and Ophthalmic Consultants of Texas, P.A.

MR. SHERGOLD: Good morning, Your Honor.

THE COURT: Good morning.

MR. SHERGOLD: Your Honor, this is defendant's motion to compel arbitration on an employment matter dispute. Back on 18 November of 2014, I appeared. I was ordered to appear on this matter. I was here. I made an argument to the Court. The defense counsel was not present at that time. Then at this point we've been given a reset notice for today in order to, I suppose, reargue the same argument I made back on 18 November.

I'm here. The defense counsel is here. I believe another attorney is here now for defendant. Thank you for allowing me to be here at 10:30. I submitted a continuance for a couple of hours. I was at the Brownsville ISD with a huge administration issue that I had to be part of with a client, and the gentlemen graciously waited until 10:30. So I thank them for their professional courtesy today.

THE COURT: All right.

MR. CORPUZ: Your Honor, Victor Corpuz on behalf of Ophthalmic Consultants of Texas, along with my co-counsel Eddie Garza. Your Honor, we did receive --

and it's all my fault.  We did receive the order by e-mail.  I was out of town the week that the order did come in.  I missed it.  It was not calendared.

We didn't receive a response or a copy of Mr. Shergold's response until we actually requested it.  That would have certainly triggered in our mind that an order had been set, or at least a hearing had been set.  We were actually exploring a couple of dates in early December to set it.  So that's when I was anticipating that it would be set.

So I'm going to fall on my sword today and also point out the fact that we're here now to argue the merits of the motion to compel arbitration.

MR. SHERGOLD:  Your Honor, I object to the fact that the gentleman was given the opportunity to come back, you know, five months later.  This case has been in abatement.  I at this point would state that I've already made my argument.  The judge said he was going to make a decision.  Then I find out he's back again today in May, which, you know, we're seven months later.  And so, you know, I really don't have anything else to say, Your Honor, except that I object.

MR. GARZA:  May I address the Court, Your Honor?

THE COURT:  Sure.

MR. GARZA: The original notice that was sent out to my co-counsel was sent out in the customary fashion that we do here in Cameron County. Those of us from the local bar are very accustomed to that. It's all electronic data that comes through e-mail. So we know what we're looking out for.

Up in Dallas sometimes it goes through the ECDF system or the electronic system where it comes in a whole different kind of fashion with all kind of notices and whatnot.

And what happened here is that particular order was received by the firm but it wasn't recognized as an official correspondence from the court. That's why it was not put down or anticipated. I've seen that happen a couple of times in our office, but my staff is used to it, so they're accustomed.

It's not -- the Court did exactly what it was supposed to do in sending out that notice, but it was a complete inadvertent oversight with no disrespect to the Court, Your Honor.

MR. CORPUZ: And, Your Honor, if I might add this too. Had we received a copy of the response before the hearing, that certainly would have alerted us to a hearing actually set. But it wasn't until we actually called Mr. Shergold's office and requested a

copy that we actually had a copy of their response.

MR. SHERGOLD: Your Honor, I e-mailed a copy the same day that I filed it in U.S. regular mail, for whatever matter it is. If I'm going to be blamed for defense counsel not being here, I guess I've heard a lot of arguments in my career, but I just heard another one. I sent him a copy. Whether it got there five days after the hearing or not -- I was here. I was here.

THE COURT: Let me ask you all this. With regard to the case, I mean, I know it was filed in 2014. Has very little been done in the way of discovery and working the case up?

MR. SHERGOLD: Your Honor, the defense position is that the -- all proceedings and discovery are stayed until there is a decision made by the Court. That's been my --

THE COURT: I was just wondering if sending you all to mediation before I take this up might be fruitful for everybody.

MR. SHERGOLD: I have no objection being sent to mediation, Your Honor.

MR. CORPUZ: Your Honor, there is a mediation component in that arbitration agreement. Mr. Shergold approached us about mediation and I said -- and I told him as well that there is a component in the

arbitration agreement to an early mediation. And I've invited him to agree to the arbitration agreement. But he didn't agree to it, and so my client did not want to go to mediation until we at least have a decision on the arbitration agreement.

MR. SHERGOLD: And, Your Honor, the condition of mediation was for me to waive any arguments I have in front of you, which I was not going to do. I've been in this business too many years. But I'll tell you, I will do this, Judge. I'm willing to go to mediation tomorrow but I'm not going to waive my client's right to bust this arbitration agreement. And, obviously, that's what the defense counsel wants, he wants me to agree to mediation and then go to arbitration as a condition of dismissing this motion, and I'm not going to agree to that, Judge.

THE COURT: Would you all be willing to go to mediation before I make a ruling here to see if maybe it will settle?

MR. GARZA: One of the reasons, Your Honor, behind the actual motion itself and why it's done at the preliminary stages of litigation is to avoid any particular ancillary cost or any judicial economy being preserved here for this Court as well. The component for mediation we're talking about is, obviously, the

issue of arbitration is paramount and is a viable motion. That's why we're here. It's not a long argument that we're here to present for you. But, at the same time, assuming that the arbitration agreement is enforced or the motion to compel is granted, one of the first things that has to be done in that capacity is to mediate, which is nonbinding, it's an opportunity to sit down and try to work it out.

But just from a procedural standpoint, before we take any steps further with respect to this litigation, we'd like to get that motion addressed if we could, Your Honor.

MR. SHERGOLD: Again, Your Honor, I have no objection to being sent to mediation prior to this hearing. I've been waiting seven or eight months for this proceeding to go forward.

THE COURT: All right. And I know you said really the only thing you want to say is you object to this. So let me hear -- other than what you stated is the reason you missed, do you have anything else you want to argue with regard to your motion for arbitration?

MR. CORPUZ: Sure, Your Honor. On the merits, Dr. Adolfo Morales, the plaintiff in this case, filed a petition alleging age discrimination and

retaliation. So this case is really an employment law case. Dr. Morales in October of 2009, when he first started his employment with Ophthalmic Consultants of Texas, signed an arbitration agreement. It's a stand-alone separate document from any handbook or any other documents as part of his employment.

He signed it in October of 2009. He understood it based on his level of education and understanding of the fact that he was waiving a right to a jury trial. He, after he signed it, he continued to work as an ophthalmic specialist for OCT, Ophthalmic Consultants of Texas. The arbitration agreement is valid because it was signed at the beginning of Dr. Morales's employment.

He agreed to the arbitration clause based on any allegations of workplace misconduct, including employment discrimination and retaliatory discharge. All such claims would be arbitrated in an arbitration setting.

The arbitration agreement also specifies that it would be conducted in the city where Dr. Morales worked. It would be conducted in accordance with the employment dispute resolution rules of the American Arbitration Association. The arbitrator would also have the right to coordinate all discovery. The arbitration

agreement also specifies that it would be final and binding on both Dr. Morales and Ophthalmic Consultants of Texas and perhaps, most importantly, the arbitration agreement specifies that the cost and expenses would be borne by OCT.

Certainly, because Dr. Morales is alleging age discrimination and retaliation, those are the types of claims that fall within the scope of the arbitration agreement that it's our position that the arbitration agreement is valid and enforceable and Dr. Morales's claims of age discrimination and retaliation fall within the scope of the arbitration agreement. And based on those two elements, it's our position that the Court must compel arbitration in this matter.

THE COURT: Mr. Shergold, would you like to respond to anything?

MR. SHERGOLD: Yes, before I do, I would just like to state that I would like the opportunity to have the transcript that was created on 18 November, 2014 produced. I'll make the request to your court staff. I'd like to have that transcribed and attached as part of my response, please. In other words, Your Honor, the argument I made on November --

THE COURT: You just want to reiterate it as part of today's record, correct?

MR. SHERGOLD:  Yes, that's correct, and that way I'll be very brief in my response, Your Honor.  The arbitration agreement is illusory.  The document that I responded to was stamped November 17, 2014.  What I'm basically arguing on behalf of this worker, Your Honor, is that -- I know it's a fad now.  I think that the courts have struggled with the issue of enforcing arbitration agreements.

Of course, we believe and the plaintiff believes it's a violation of the ultimate court's doctrine, the fact that people have a constitutional right to be able to have a jury of their peers basically hear the case.  It's a matter of first impression on this issue if this case is appealed or places a plea to the jurisdiction.  I plan to make the argument that this is a constitutional violation of the Texas constitution to prohibit or to somehow impede a citizen's right to have his day in court based upon that.  And that would be something I would use as an appeal.

But getting to the nuts and bolts of what we have to deal with right now as far as the current law in the arbitration enforceability, we claim it's illusory and void because in the agreement -- in the agreement to arbitrate, there is nothing in there that talks about what happens if the person, or the employee,

I should state, becomes an ex-employee. And if the person becomes an ex-employee, like Dr. Morales, is there any sort of notice provision that's in this arbitration agreement that states specifically that that ex-employee is to be notified of any specific changes in the arbitration agreement. No, there isn't.

And if the defense counsel can point out what happens in that scenario in that document, where a person becomes an ex-employee and if there is any documentation in that agreement, it says that notice shall be provided to the ex-employee of any changes or any revisions or cancelations in the policy, then I would like to see that. Because I haven't been able to find it in the paperwork that was sent to me.

We claim on behalf of the worker ipso facto that that would make the arbitration agreement void because it's illusory. In other words, he who pays the piper plays the tune, Your Honor. He who pays the piper plays the tune. So if the arbitration agreement that exists doesn't have any notification provisions or any discussion regarding the situation when an employee becomes an ex-employee and he moves off to Alaska or California or maybe to Mexico or whatever, maybe across the street, there is nothing there that says that if we change the agreement you become part of the change and

you shall be notified. That's my argument in a nutshell on that issue.

The second component of my argument is even more simple, since I'm a country boy. The other argument is that the defendant waived his right to enforce this arbitration agreement. It waited almost over a year from the time that the EEOC was contacted in order to invoke or to have a provision enforced. And I can point out in my response to the enforceability agreement of this arbitration. I can point out the page -- if I can get to that, please.

Page 14, item 3, waiver of arbitration agreement. Defendant has waived its right to compel arbitration from the fact that the latest request is nearly a year after plaintiff submitted a discrimination complaint with the Texas Work Force Commission, Division of Civil Rights.

I cited a case. It was the *Interconex* case, Your Honor, that comes out of the First District of Houston, Texas Appeals, where it actually talks about the fact that in that situation defendant had acted inconsistently with the right to arbitrate by failing to answer before the default judgment was taken.

In this situation the analogy clearly is equivalent because of the fact that the defendant here

knew that my client was filing a complaint with the Equal Employment Opportunity Commission, Civil Rights Division and Workforce Division of the state, and they waited over a year to invoke the provision, Your Honor. So we say that the defendant has waived the arbitration agreement by waiver.

THE COURT: So those are our two main points, Judge. I'm going to stop talking and, again, for the record, indicate that I will be requesting that the transcript that I basically made on 18 November, 2014 be incorporated as part of my response arguing against the arbitration enforceability, Your Honor. And with that, I thank you very much.

THE COURT: All right. Do you all have proposed orders?

MR. SHERGOLD: Your Honor, I do have a proposed order that was submitted by paper back in 18 November. I don't know if it stood the test of time.

THE COURT: Yes.

MR. CORPUZ: We have a proposed order, Your Honor, other than the fact that --

THE COURT: I do have them both.

MR. CORPUZ: -- 2014 needs to be changed to 2015.

THE COURT: That's fine. Let me --

MR. SHERGOLD: That's a very salient point, Your Honor.

THE COURT: Let me look at that transcript and then I'll get you an answer here. I'll try to have an order out before the end of the day. I think Corinna can probably pull it up and I can read it on the computer.

MR. SHERGOLD: Your Honor, I'll make an official request to pay the transcription fee because I do know your employees do a lot of good work and we'll be happy to request that in writing and pay whatever it costs.

MR. CORPUZ: And, Your Honor, if I could respond to the waiver argument very briefly. The case law on arbitration agreement and waiver of arbitration agreements that Dr. Morales signed is pretty clear. The only time that the courts have found waiver is when a party has done something inconsistent, significantly inconsistent with the arbitration agreement, such as seeking affirmative relief from the Court, filing any kind of discovery motions with the Court, filing a counterclaim, conducting discovery for over a year and a half before triggering the arbitration agreement.

So in this instance there has not been a waiver of the arbitration agreement. In fact,

Dr. Morales's signature at the beginning of his employment demonstrates that he agreed to the arbitration agreement.

THE COURT: Okay. Mr. Corpuz, your firm filed the original -- beginning with the original answer and subsequent documents electronically; is that correct?

MR. CORPUZ: That's correct, Your Honor.

THE COURT: Okay. Because I was looking for all that in the file and it seems to be actually in the electronic file and not in the physical file.

MR. GARZA: I have a courtesy copy for the Court, if you'd like, Your Honor.

THE COURT: No, that's fine. I just wanted to make sure that electronic is the way you all were filing from the get-go.

MR. CORPUZ: Yes, Your Honor, and our answer does refer to the arbitration agreement as well.

MR. SHERGOLD: May I respond to that, Your Honor? The answer refers to the arbitration agreement, but does not -- was not -- an arbitration enforcement of that agreement was not filed until several weeks after that. So I think that also constitutes a waiver as well, Your Honor.

THE COURT: Okay. Well, I'll look at the

transcript and I'll try to get you all a ruling on this before the end of the day.

MR. SHERGOLD:  And can I get the court reporter's card, please?

THE COURT:  Sure.

MR. SHERGOLD:  May I approach?

THE COURT:  Yes, sir.  Thank you.  All right.  Good luck catching your flight, Mr. Corpuz.

MR. CORPUS:  Thank you, Your Honor.

(The hearing was concluded at 10:53 a.m.)

THE STATE OF TEXAS:

COUNTY OF CAMERON:

### CERTIFICATE OF COURT REPORTER

I, CORINNA N. GARCIA, Official Court Reporter in and for the 444th District Court of Cameron County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of Reporter's Record, in the above styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $112.20 and was paid/will be paid by Appellant Ophthalmic Consultants of Texas.

WITNESS MY OFFICIAL HAND on this the 2nd day of July, 2015.

/S/ Corinna N. Garcia
CORINNA N. GARCIA, CSR
Official Court Reporter
974 East Harrison Street
Brownsville, Texas   78520
Certificate No. 5210
Expiration Date 12/31/15
(956) 547-7061